**Joanne CORNWELL, et al., Plaintiffs,**

v.

**CALIFORNIA BOARD OF BARBERING AND COSMETOLOGY, et al., Defendants.**

**No. Civil 97–0138–B(POR).**

United States District Court, S.D. California.

May 2, 1997.

---

David Kleinfeld & Richard Segal, Pillsbury, Madison & Sutro L.L.P., San Diego, CA, Clint Bolick & Donna Matias, Institute for Justice, Washington, DC, for Plaintiffs.

Kathleen Lam, Deputy Attorney General for the State of California, San Diego, CA, for Defendants.

## ORDERING GRANTING DEFENDANTS' MOTION TO DISMISS AS TO PLAINTIFF AHNHCA; DENYING DEFENDANTS' MOTION TO DISMISS AS TO PLAINTIFF CORNWELL; GRANTING PLAINTIFFS' 45 DAYS LEAVE TO FILE AN AMENDED COMPLAINT

BREWSTER, District Judge.

This matter came on regularly for hearing on defendants' motion to dismiss. Plaintiffs are represented by David Kleinfeld and Richard Segal of Pillsbury, Madison & Sutro LLP and by Clint Bolick and Donna Matias of the Institute for Justice. Defendants are represented by Kathleen Lam, Deputy Attorney General for the State of California. After careful consideration of the moving and opposing papers, the Court hereby GRANTS defendants' motion to dismiss as to plaintiff American Hairbraiders and Natural Hair Care Association (AHNHCA), and DENIES defendants' motion to dismiss as to plaintiff JoAnne Cornwell.

### I. Introduction

Plaintiffs Dr. JoAnne Cornwell (Dr. Cornwell) and the American Hairbraiders and Natural Hair Care Association (AHNHCA) are suing two State of California agencies and various individuals alleging that California's licensing requirement for hairbraiders violates the due process, equal protection and privileges and immunities clauses of both the federal and California constitutions. The Court has jurisdiction over these claims un-

der 42 U.S.C. § 1983, 28 U.S.C. §§ 1331, 1367.

## II. Background

### A. The Parties

Plaintiff Dr. Cornwell is the owner of Sisterlocks, a sole proprietorship, which specializes in African hair styling. Plaintiff AHNH-CA is a non-profit nationwide organization dedicated to protecting the rights of hairbraiders and natural hair stylists. Its members are individuals and salons engaged in the business of African hair styling and natural hair care. Complaint ¶¶ 5–6.

Defendants Rosemary Faulkner, Daniel Seirras, Dianne Eastman, Joan Castle Joseff, Jeanette Keaton, Ronald Lind, Carole Matchette, Howard Stein and Philip Taylor are board members of defendant California Board of Barbering and Cosmetology (CBBC). Defendant Pamela Ramsey is the Executive Officer of defendant CBBC, and defendant Susan Harrigan is an Enforcement Officer for the CBBC. The CBBC is established and authorized by Cal. Bus. & Prof. Code §§ 7302 and 7312 to regulate the practice of barbering and cosmetology in the State of California, to issue licenses, to discipline persons who violate the Barbering and Cosmetology Act (Cal. Bus. & Prof.Code §§ 7301 *et seq.*), and to oversee inspections of barbering and cosmetology establishments. Plaintiffs are suing these defendants in their official capacities for enforcing the Barbering and Cosmetology Act. Complaint ¶ 7.

Defendant Department of Consumer Affairs (DCA) is established as a State and Consumer Services Agency by Cal. Bus. & Prof.Code § 100 to regulate various occupations. The DCA is responsible for establishing minimum qualifications and standards of competency, issuing licenses, and ensuring compliance with regulations authorized under the California Business and Professions Code. The CBBC acts under the authority and supervision of the DCA. Complaint ¶ 8.

Defendant Daniel E. Lungren is the Attorney General for the State of California. Pursuant to Cal. Bus. & Prof Code § 321, the Attorney General has the authority to seek an injunction against any acts or practices in violation of any state law that the director of a regulatory agency finds may cause harm to consumers. Plaintiffs sue Lungren in his official capacity. Complaint ¶ 10.

### B. The Barbering and Cosmetology Act

Under the Barbering and Cosmetology Act, it is unlawful for a person to engage in barbering, cosmetology, or electrolysis for compensation without a valid license from the CBBC, to engage in barbering or cosmetology in an establishment that does not have a valid license, or to operate an establishment without a valid license. Cal. Bus. & Prof Code § 7317. Cosmetology includes "[a]rranging, dressing, curling, waving, machineless permanent waving, cleansing, cutting, shampooing, relaxing, singeing, bleaching, tinting, coloring, straightening, dyeing, brushing, applying hair tonics, beautifying, or otherwise treating by any means the hair of any person." Cal. Bus. & Prof.Code § 7316(b)(1).

On May 16, 1982, the Attorney General issued an opinion that the practice of African hair braiding falls within the definition of "cosmetology" and requires a cosmetology license. 65 Op. Atty. Gen. 284 (May 6, 1982). In order to obtain a license, a person must take a licensing examination. Cal. Bus. & Prof Code § 7321. In order to be qualified to take the examination, a person must have at least a tenth grade education and must have completed a course in an approved cosmetology school, completed an apprenticeship program, or have practiced cosmetology outside of the state for a requisite period of time. Cal. Bus. & Prof.Code § 7321. In its regulations, the CBBC requires cosmetology schools to provide 1,600 hours of technical instruction and practical operations in cosmetology techniques. Cal.Code Reg. § 950.2. These courses must provide instruction in a broad range of cosmetology techniques as well as bacteriology, anatomy, physiology, disinfection and sanitation. Plaintiff alleges that completing such a course takes at least nine months of full-time study and costs between $5,000 and $7,000.

### C. African Hair Styling

African hair styling is "a highly specialized artistic and cultural form of hair styling and

hair care whose main techniques include hair braiding, locking, twisting, weaving, and cornrows." Complaint ¶ 23. These techniques originated centuries ago in Africa and were brought into this country by Africans where the methods have endured and been expanded. Complaint ¶ 24. African hair styling is a form of natural hair care that does not use any chemicals. Complaint ¶ 26. Plaintiff alleges that no CBBC-approved cosmetology schools teach African hair styling techniques as part of their required curriculum. Complaint ¶ 27. Further, the CBBC-mandated curriculum does not include any instruction in African hair styling, natural hair care, braiding, twisting, weaving, locking or cornrowing.

African hair styling is distinct from the type of styling taught in cosmetology schools in that it rejects the application of harsh chemicals to the hair of African–Americans. These chemicals can cause long-term damage to the hair. Instead, African hair styling uses the natural texture of the hair to style the hair. Complaint ¶¶ 30–33. African hair styling involves physical manipulation of the hair and is labor intensive, often requiring between four and twelve hours to complete, including instruction in the proper maintenance of the hairstyle. Complaint ¶ 34.

Many African–American women choose to have their hair styled in African techniques as an expression of their cultural heritage. Complaint ¶ 28.

### D. Facts Giving Rise to the Instant Action

Plaintiff Dr. Cornwell founded Sisterlocks, a San Diego based company, to meet the natural hair care needs of women with textured hair. Complaint ¶ 39. Dr. Cornwell both styles the hair of African–American women, and trains others in African hair styling. She runs a two-day training seminar and has trained approximately 75 people. Complaint ¶ 40–44. Dr. Cornwell seeks to open her own salon, but she cannot do so unless she obtains a license from the CBBC. Complaint ¶ 48. Dr. Cornwell is not a CBBC-licensed cosmetologist, and believes that the instruction she would receive at a CBBC-approved cosmetology school would be irrelevant to the techniques of African hair styling that she employs. Complaint ¶ 49.

Plaintiff AHNHCA is a nationwide trade association composed of individuals and salons engaging in various forms of hair braiding and African hair styling. Complaint ¶ 53. One of AHNHCA's primary efforts is to "challenge the arbitrary and unreasonable application of state cosmetology and barbering licensing laws and regulations to individuals engaged in the art of African hair styling." Complaint ¶ 55.

Ali Rasheed and his salon, the Braderie, belong to AHNHCA. The Braderie is an African hairbraiding and weaving salon in San Diego. Rasheed owns the business with his wife and their business partner, Marguerite Sylva. Complaint ¶ 60. Ms. Sylva is a Master Braider, certified by the National Braiders Guild, and a licensed cosmetologist. Complaint ¶ 61. At the two Braderie salons, seven individuals, none of whom are licensed cosmetologists, perform braiding and weaving services for customers. Most of them, including Ms. Sylva, learned their craft in Africa. Complaint ¶¶ 64–65.

On October 2, 1996, a CBBC inspector visited the Braderie in San Diego and issued a "Notice of Violation and Assessment of Fine" to the salon and to Ms. Sylva whose cosmetology license had expired. Ms. Sylva was cited for practicing cosmetology without a license and the Braderie was cited for "aiding and abetting unlicensed activity." Both Ms. Sylva and the Braderie were fined $100. Complaint ¶¶ 67–68. The Braderie was also charged with operating an establishment without a license and for braiding activity by unlicensed people. Complaint ¶ 70. Ms. Sylva and the Braderie have appealed their citations and fines. Complaint ¶ 71.

Many of the braiders at the Braderie cannot afford to take a cosmetology course, and believe that such a course would not teach them anything relevant to African hair styling. Moreover, many of them emigrated from Africa and do not possess the tenth grade education required for eligibility to take the licensing examination. Complaint ¶ 75.

The Braderie cannot continue to operate without a license, and cannot continue to employ African hair braiders who are not licensed cosmetologists. Complaint ¶¶ 82–84.

### E. Plaintiffs' Complaint

Plaintiffs' complaint asserts three main claims: (1) the Cosmetology and Barbering Act, as applied to African hair styling, violates plaintiffs' due process rights under the United States and California constitutions (claims 1 and 4); (2) the Barbering and Cosmetology Act, as applied to African hair styling, violates plaintiffs' equal protection rights under the U.S. and California constitutions (claims 2 and 5); and (3) the Barbering and Cosmetology Act, as applied to African hair styling, violates plaintiffs' rights under the privileges and immunities clauses of the U.S. and California constitutions (claims 3 and 6). Plaintiffs seek a declaratory judgment that the Barbering and Cosmetology Act is unconstitutional as applied to African hair styling, a permanent injunction against the enforcement of the statute and its attendant regulations, and attorney's fees and costs. Plaintiffs do not seek monetary damages.

On March 27, 1997, the defendants filed motions to dismiss.

### III. Discussion

### A. Standard of Law

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed with prejudice if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiff *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

1995). The court need not, however, accept every allegation in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted).

### B. Whether Plaintiff's Claims Against the DCA are Barred by Eleventh Amendment Immunity

 The Eleventh Amendment does not preclude suits against state officers for prospective injunctive relief, even when the remedy will enjoin the implementation of an official state policy. *Ex Parte Young*, 209 U.S. 123, 161–62, 28 S.Ct. 441, 454–55, 52 L.Ed. 714 (1908); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir.1989); *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1173–75 (9th Cir.1984). Defendants are correct that neither state agencies nor state officials acting in their official capacities are "persons" for purposes of a § 1983 suit seeking monetary damages. *Will v. Michigan Department of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989). State officials acting in their official capacity, however, are "persons" for the purposes of § 1983 when sued only for prospective injunctive relief.

> Of course a state official acting in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. at 167 n. 14[, 105 S.Ct. at 3106 n. 14]; *Ex Parte Young*, 203 [209] U.S. 123, 159–60[, 28 S.Ct. 441, 453–54, 52 L.Ed. 714] (1908). The distinction is "commonplace in sovereign immunity doctrine." L. Tribe, American Constitutional Law § 3–27, p. 190, n. 3 (2d ed.1988), and would not have been foreign to the 19th-century Congress that enacted § 1983[.]

*Will*, 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10; *see Chaloux*, 886 F.2d at 252.[1] In this

---

1. Defendants' reliance on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) is misplaced. The

court in *Pennhurst* addressed the issue of whether sovereign immunity under the Eleventh Amendment barred suit against state officials act-

suit, plaintiffs only seek declaratory and injunctive relief For this reason, Eleventh Amendment sovereign immunity is not a bar to plaintiffs' claims for prospective injunctive relief against state officials acting in their official capacities.

 The state officials with the statutory duty to enforce and administer the allegedly unconstitutional state statute are the proper defendants in a suit for prospective injunctive relief *Ex Parte Young*, 209 U.S. at 157–61, 28 S.Ct. at 452–54; *Chaloux*, 886 F.2d at 251–52. The members of the CBBC are authorized to regulate the practices of barbering and cosmetology in the State of California, to issue licenses, to discipline people who violate the Barbering and Cosmetology Act, and to oversee inspections of barbering and cosmetology establishments.[2] Cal. Bus. & Prof.Code § 7312. The California Attorney General has the authority to seek an injunction against any acts or practices in violation of any state law that the director of a state regulatory agency finds may cause harm to consumers. Cal. Bus. & Prof Code § 321. These defendants are proper defendants in a suit for prospective injunctive relief pursuant to *Ex Parte Young*.

 Defendants are correct, however, that suit cannot be maintained against the Department of Consumer Affairs. State agencies enjoy Eleventh Amendment immunity, and are not considered "persons" within the meaning of § 1983. *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (suits against state department of health and rehabilitative services barred by Eleventh Amendment immunity); *Hale v. State of Arizona*, 967 F.2d 1356 (9th Cir.), *cert. denied*, 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993) (holding that Arizona Department of Corrections is not a "person" within the

meaning of 42 U.S.C. § 1983); *see Hoohuli*, 741 F.2d at 1174. Further, the CBBC, not the DCA, is responsible for setting minimum qualifications for licensure under the Barbering and Cosmetology Act and for enforcing the statute. Cal. Bus. & Prof.Code § 101.6. For these reasons, plaintiffs' claims against the Department of Consumer Affairs are barred by the Eleventh Amendment.

 Although defendants do not move to dismiss the claims against the California Board of Barbering and Cosmetology, the CBBC is also immune from suit under the Eleventh Amendment. In determining whether an entity is an arm of the state, the Court considers:

> whether a money judgment would be satisfied out of state funds, whether the entity performs central government functions, whether the entity may sue and be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity.

*Hale*, 967 F.2d at 1370. In this case no money judgment is sought, but if injunctive relief were awarded, it would prevent the enforcement of a state law and state regulations against plaintiffs. The CBBC performs the state functions of licensing and regulating several professions. The CBBC has the power to promulgate regulations concerning the practice of barbering and cosmetology, to inspect establishments, to issue notices of violation, and to assess administrative fines. *See* Cal. Bus. & Prof.Code §§ 7311 & 7312. The five public CBBC board members are appointed by the Governor of the state of California, the Senate Committee on Rules, and the Speaker of the Assembly. Cal. Bus. & Prof.Code § 7306. The CBBC is a state board operating within the Department of Consumer Affairs. Cal. Bus. & Prof.Code

---

ing in their official capacity for violations of state law only. There were no alleged violations of federal law. The Supreme Court concluded that such claims were barred. As *Kentucky v. Graham* and *Will v. Michigan* demonstrate, the Eleventh Amendment does not bar suits against state officers in their official capacity for prospective relief for violations of *federal law*. Plaintiffs in this case allege violations of the United States Constitution.

**2.** Defendant points out that Pamela Ramsey is not the Executive Director of the DCA, but rather the CBBC. Similarly, Susan Harrigan is an enforcement officer for the CBBC not the DCA. Like the CBBC board members, these officials' duties include administering and enforcing the California Barbering and Cosmetology Act. *See,* Cal. Bus. & Prof.Code §§ 7310 & 7314.

§ 7302. The BCA does not state the corporate status of the CBBC or whether it can be sued in its own capacity. Given that the CBBC regulates the statewide practice of several professions, that it is a subdivision of a major state agency, and that it is appointed by high-level state officials, the CBBC is an arm of the state for the purposes of Eleventh Amendment immunity. Other courts have found similar governmental units to be arms of the state. *See, e.g., Jones v. State of Michigan*, 525 F.Supp. 636 (E.D.Mich.1981) (State Board of Dentistry was a state agency); *Johnson v. Rodriguez*, 943 F.2d 104 (1st Cir.1991) (Massachusetts Commission against Discrimination was a state agency); *Darlak v. Bobear*, 814 F.2d 1055 (5th Cir. 1987) (Department of Health and Human Services was a state agency); *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir.1982) (state university is state instrumentality); *Lupert v. California State Bar*, 761 F.2d 1325 (9th Cir.1985) (Board of Governors of State Bar was state agency); *Ronwin v. Shapiro*, 657 F.2d 1071 (9th Cir.1981) (Arizona Law Review was a state agency). Accordingly, on its own motion, the Court dismisses all claims against the CBBC.

Plaintiffs can only proceed against the individual CBBC board members and the Attorney General in their official capacities for their actions in administering and enforcing the allegedly unconstitutional provisions of the Barbering and Cosmetology Act and its attendant regulations.

All claims against the Department of Consumer Affairs and the California Board of Barbering and Cosmetology are DISMISSED without leave to amend.

## C. Younger Abstention

In *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts may not enjoin pending state court criminal proceedings. The Supreme Court fashioned an abstention doctrine preventing federal courts from interfering with state criminal proceedings, even if there is an allegation of a federal constitutional violation. *Younger* abstention has been extended to civil proceedings where important state interests are involved.

*Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975): *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). In *Huffman*, state officials instituted a civil nuisance proceeding against an adult theater under an Ohio statute which made the exhibition of obscene films a nuisance. The state prevailed in the trial court and obtained an injunction. Rather than appealing the judgment, the theater owner filed a suit in federal court under 42 U.S.C. § 1983 seeking declaratory and injunctive relief. The Supreme Court held that the lower federal courts were required to abstain under *Younger*. The court reasoned that the state's nuisance proceeding was "more akin to a criminal prosecution than are most civil cases." *Id.* at 604, 95 S.Ct. at 1208. In *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the Supreme Court clarified that *Younger* abstention applies to all civil cases in which the state is a party.

■■■ The Supreme Court has further explained that abstention is appropriate when the state is a party or when important state interests are at stake and so long as the state system provides an opportunity to adjudicate federal constitutional claims. *Moore v. Sims*, 442 U.S. 415, 423–26, 99 S.Ct. 2371, 2377–79, 60 L.Ed.2d 994 (1979). In determining whether a federal court should abstain on *Younger* grounds, the court must examine: (1) the nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings. *Kenneally v. Lungren*, 967 F.2d 329, 331–32 (9th Cir.1992) (citing *Middlesex*, 457 U.S. 423, 102 S.Ct. 2515), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993).

The Supreme court has extended *Younger* abstention to pending state administrative proceedings. In *Middlesex County Ethics Committee*, an attorney was brought up on disciplinary charges in the New Jersey administrative bar discipline system. He then

**1268**

filed suit in federal court to enjoin the disciplinary proceeding. The Supreme Court noted that the state had an "extremely important" interest in this case because of its need to maintain and ensure the "professional conduct" of its attorneys, and affirmed the lower court's abstention on *Younger* grounds. 457 U.S. at 428–34, 102 S.Ct. at 2519–22.

In *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), a teacher at a church-run school was fired when she became pregnant because the church believed that mothers should stay at home and raise their preschool children. The teacher filed a complaint with the Ohio Civil Rights Commission (Commission), contending that her nonrenewal was unlawful gender discrimination. The Commission found probable cause to believe that she had been discriminated against and initiated administrative proceedings against the school. The school then filed suit in federal court seeking an injunction against the administrative proceeding on First Amendment grounds. The Supreme Court held that the lower federal court should have abstained pursuant to *Younger*. *Id.* at 623–25, 106 S.Ct. at 2720–22. The court explained that *Younger* abstention applies to state administrative proceedings "in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id.* at 627, 106 S.Ct. at 2723.

■ In the instant case, the Braderie and Ms. Sylva have appealed their citations and fines for violation of the Barbering and Cosmetology Act and are currently involved in an administrative appeal. A hearing date has not yet been set for their administrative appeal. Under Cal. Bus. & Prof.Code § 7410, a person who receives a citation or fine has the right to appeal it to a disciplinary review committee established by the CBBC. Persons appealing fines or citations have a right to appear before the CBBC, its authorized representative or administrative law judge and to present oral and written evidence "relating to the facts and circumstances relating to the notice of violation[.]"

Cal. Bus. & Prof Code § 7410. When a licensee contests a citation, the CBBC is required to afford an opportunity for such a hearing. Cal. Bus. & Prof Code § 7411. This hearing is conducted in accordance with the formal administrative hearing procedures in Cal. Gov.Code § 11500 *et seq.* The decision rendered is subject to judicial review in the state court system by means of a writ of mandate. Cal. Gov.Code § 11523. These procedures adequately allow the Braderie and Ms. Sylva to raise their federal constitutional challenges. *Kenneally,* 967 F.2d at 332 (procedures adequate because the Board can receive evidence of constitutional challenges and California courts are competent to review such challenges upon a petition for a writ of mandate).

It is clear that were this case brought by the Braderie and/or Ms. Sylva, the Court would be required to abstain on *Younger* grounds. There is an ongoing state proceeding involving the state, the Braderie and Ms. Sylva. The Braderie and Ms. Sylva have raised their constitutional objections to the application of the Barbering and Cosmetology Act in those proceedings. The state has an important interest in regulating the conduct of its professions. *See Middlesex,* 457 U.S. at 434, 102 S.Ct. at 2522 (noting important state interest in regulating professions). The purpose of these regulations is to protect the health, safety and welfare of its citizens. Cal. Bus. & Prof.Code § 7312. This interest is evidenced by the comprehensive scheme for regulating barbering and cosmetology enacted in the Barbering and Cosmetology Act. Cal. Bus. & Prof.Code § 7300 *et seq.*

■ In this case, however, the Braderie and Ms. Sylva are not plaintiffs. This action is brought by Dr. Cornwell and AHNHCA. As to Dr. Cornwell, her claims are not barred by the proceedings pending against Braderie and Ms. Sylva. "[A]bstention is mandated under Younger only when the federal plaintiff is actually a party to the state proceeding; the doctrine does not bar non-parties from raising constitutional claims in federal court, even if the same claims are being addressed in a concurrent state proceeding involving similarly situated parties." *Blackwelder v. Safnauer,* 689 F.Supp. 106, 119

(N.D.N.Y.1988), *aff'd and appeal dismissed,* 866 F.2d 548 (2nd Cir.1989).

In *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), three operators of topless dancing establishments brought suit in federal court to enjoin enforcement of a town ordinance making topless dancing unlawful. After the suit was filed, one of the plaintiff establishments resumed topless dancing and was prosecuted in state court for violating the ordinance. The Supreme Court upheld the preliminary injunction as to the two establishments that were not parties to the state proceeding, but denied relief to the establishment that was being prosecuted in state court. *Id.* at 924–28, 95 S.Ct. at 2564–66. This case demonstrates that it is only the actual party to the state court proceeding, not all similarly situated parties, who cannot challenge the constitutionality of the statute in federal court.

Similarly, in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), two men were distributing pamphlets and were told that if they did not desist, they would be arrested. One desisted and one did not. The one who did not was arrested and prosecuted for trespassing. The one who stopped filed suit in federal court to have the statute declared unconstitutional. Despite the fact that he had been pamphleting along with the man who was arrested, the Supreme Court held that the federal court should not abstain under *Younger* because the federal plaintiff was not a party to the state court proceeding. *Id.* at 455–60, 94 S.Ct. at 1213–16. For this reason, even if the Court dismisses the claims brought by AHNHCA on *Younger* grounds, the claims brought by Dr. Cornwell may still proceed.

The more difficult question is whether AHNHCA is barred from bringing suit in federal court because one of its members is involved in a state administrative proceeding. No courts appear to have directly confronted this issue. Two circuits have, however, addressed the issue of whether related parties can be barred from litigating in federal court on a theory of derivative preclusion. In *Citizens for a Better Environment, Inc. v. Nassau County,* 488 F.2d 1353 (2nd Cir.1973), a nonprofit environmental organization and some of its employees brought a suit pursuant to 42 U.S.C. § 1983 to restrain police departments from enforcing local ordinances prohibiting door to door solicitation for education and fund-raising campaigns. Some of the organization's other employees had been cited for violating the ordinances and were involved in state court proceedings. *Id.* at 1355–56. The Second Circuit held that the organization was not barred from seeking prospective injunctive relief from enforcement of the ordinance under *Younger* even though several of its employees were involved in state court proceedings. *Id.* at 1360–61.

The Third Circuit confronted a similar situation and reached the same conclusion in *New Jersey–Philadelphia v. New Jersey State Board of Higher Education,* 654 F.2d 868 (3rd Cir.1981). Suit was brought in federal court by a church, a religious college affiliated with the church, and students and parents of students at the college against the state Board of Education challenging the constitutionality of its enforcement of licensing regulations for higher educational institutions. The Board of Education had previously filed suit against the Board of Directors of the college and several of its officers in state court. *Id.* at 870–72, 877. Defendants argued that the plaintiffs in the federal suit were so closely related to the state court defendants, that the court should abstain on *Younger* grounds. The court noted that there might be a situation where a nonparty is so related to a state court party "in terms of ownership, control and management that pursuit of a separate federal action would undermine *Younger.*" *Id.* at 880. Relying on *Steffel* and *Doran,* the Third Circuit held that although the college itself was barred from litigating in federal court, the church with which it was affiliated, and students at the college and their parents could maintain the federal suit against the Board of Education. *Id.* at 881.

These two cases deal with related parties, but they do not address the issue of whether an organization is barred from bringing suit in federal court when one of its members, on whose behalf it is bringing the suit, is involved in an ongoing state proceeding. This

issue was discussed by Chief Justice Burger in an opinion which concurred in part and dissented in part in *Allee v. Medrano,* 416 U.S. 802, 830–31, 94 S.Ct. 2191, 2207–08, 40 L.Ed.2d 566 (1974) (joined by Justices White and Rehnquist). In *Allee,* a union and several of its members brought suit in federal court challenging the constitutionality of state statutes under which picketers, who were also union members, had been arrested and prosecuted. A three judge district court panel decided the case prior to the Supreme Court's decision in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), reaching the merits of the case and ruling that the state statutes at issue were unconstitutional. The Supreme Court, however, received *Allee* after it had decided *Steffel.* After affirming the district court on several unrelated matters, the Supreme Court vacated the district court's decision holding the state statutes unconstitutional for reconsideration in light of *Steffel.*[3] *Allee,* 416 U.S. at 818–20, 94 S.Ct. at 2201–03. In his opinion dissenting in part and concurring in part, Chief Justice Burger explained how he felt the lower court should apply *Younger* to this dispute on remand.

> The union, to the extent that it has standing, will be seeking interference with state court prosecutions of its members. There is an identity of interest between the union and its prosecuted members; the union may seek relief only because of the prosecutions of its members, and only by ensuring that such prosecutions cease may the union vindicate the constitutional interests which it claims are violated. The union stands in the place of its prosecuted members even as it asserts its own constitutional rights.

**3.** The record before the Supreme Court was unclear as to whether there were ongoing state prosecutions of union members and, if so, whether those prosecutions were in bad faith. Due to the incomplete record, the Supreme Court could not perform the *Younger* analysis itself

**4.** Defendants apply the incorrect standard in arguing that AHNHCA does not have third party standing to raise the Braderie and Ms. Sylva's claims. The issue is actually whether AHNHCA has organizational standing based on the injury to its members.

*Allee,* 416 U.S. at 830–31, 94 S.Ct. at 2208. Chief Justice Burger felt that *Younger* abstention should preclude the union from litigating in federal court on behalf of its members who were being prosecuted in state court.

AHNHCA brings this action on behalf of all its members who are African hair stylists and hair braiders, including but not limited to the Braderie and Ms. Sylva. The citations of the Braderie and Ms. Sylva are evidence of the State of California's application of the Barbering and Cosmetology Act to African hair stylists. AHNHCA is using the citations of the Braderie and Ms. Sylva to confer standing on it to challenge the constitutionality of the Barbering and Cosmetology Act. An organization may bring an action on behalf of its members if (1) the individual members would otherwise have standing to sue in their own right; (2) the interests being protected are relevant to the organization's purpose; and (3) the individual members are not required to participate in the lawsuit. *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1396 (9th Cir.1992) (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).[4]

It is clear that under *Steffel* and *Doran,* Dr. Cornwell and other members of AHNHCA can maintain suit against members of the CBBC for alleged constitutional violations. At first glance, it would appear unjust to deny AHNHCA the ability to maintain suit against members of the CBBC when one of its members would be barred under Younger principles while many other members would have standing to sue for alleged constitutional violations.[5]

**5.** A rule that denied an organization's ability to sue in federal court when any one of its members was involved in a state court or administrative proceeding would be far reaching. It order to establish ripeness and to meet the case or controversy requirement, plaintiff would need to establish that the state was enforcing the challenged regulation against its members. The only way to establish this is if the state has been citing or arresting individuals. Once individuals became enmeshed in state proceedings, however, the organization would lose its ability to bring suit in federal court. The organization would be left in the impossible situation of not having standing to

The problem with the current complaint is that the relief sought is really sought on behalf of all AHNHCA's members, not on behalf of AHNHCA itself. Plaintiffs request injunctive and declaratory relief against enforcement of the Barbering and Cosmetology Act (BCA) "as applied to Plaintiffs' opportunity to operate their legitimate African hair styling business[.]" Complaint p. 31. AHNHCA does not operate an African hair styling business; rather, it is a trade association of African hair styling businesses. AHNHCA is actually seeking an injunction prohibiting enforcement of the BCA as applied to its members. The Braderie and Ms. Sylva are members of AHNHCA, however the Court cannot enjoin the application of the BCA to them since they are currently involved in a state administrative proceeding. *See Younger*, 401 U.S. 37, 91 S.Ct. 746. As currently framed, the Court cannot grant plaintiffs the relief they seek because it would act to enjoin a pending state proceeding.[6]

For these reasons, the Court finds that it must abstain on *Younger* grounds because any relief the Court would award in favor of AHNHCA would operate to enjoin the pending state proceeding against Ms. Sylva and the Braderie. Defendant's motion to dismiss plaintiff AHNHCA is GRANTED. Plaintiffs are provided 45 days to file an amended complaint.

### D. Plaintiff Cornwell's Substantive Due Process Claims

#### 1. Federal Due Process Claim

Plaintiff Cornwell contends that the BCA arbitrarily and unreasonably limits her right to practice her profession of choice—African hair styling. The Supreme Court has recognized that "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity" that the Constitution was meant to protect. *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10–11, 60 L.Ed. 131 (1915). "[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *see Hampton v. Mow Sun Wong*, 426 U.S. 88, 115–16, 96 S.Ct. 1895, 1910–12, 48 L.Ed.2d 495 (1976) (holding statute barring aliens from Civil Service unconstitutional); *City of Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980) (Marshall, J., dissenting) (noting constitutional importance of opportunity for employment). The Ninth Circuit has consistently held that the due process clause provides people with a constitutional "right to pursue an occupation." *Benigni v. City of Hemet*, 879 F.2d 473, 478 (9th Cir.1988); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir.1985).

Substantive due process challenges to economic regulations are subjected to rational basis review. *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213–14, 57 L.Ed.2d 91 (1978). The burden is on the party challenging the regulation "to establish that the legislature has acted in an arbitrary and irrational way."

---

sue in federal court until its members are cited, but then losing the ability to sue in federal court on *Younger* grounds once its members become involved in state court proceedings. This rule would effectively deny the organization a federal forum. The Supreme Court has held that a federal forum must be available for those threatened with violations of federally protected rights and not presently parties to state court proceedings. *See Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

**6.** The Fifth Circuit allowed a similar suit to proceed as a class action on behalf of all of the organization's members who were not involved in state proceedings. *Robinson v. Stovall*, 646 F.2d 1087 (5th Cir.1981). In *Robinson*, the Unit-

ed League of Mississippi, a black civil rights organization, staged several marches. The town of Okalona enacted an ordinance strictly limiting where, when and how marches could be held. During a subsequent march, over 100 members of the United League were arrested and prosecuted for violating the ordinance. A class action was brought on behalf of all United League members who were not being prosecuted, challenging the constitutionality of the ordinance. The Fifth Circuit reversed the district court's abstention on *Younger* grounds, finding that non-arrested League Members were not so inextricably intertwined with the arrested members so as to justify the application of *Younger* to them. *Id.* at 1088–90, 1092–93.

U*sery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). The regulation may only be struck down if there is no rational connection between the challenged statute and a legitimate government objective. *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 488, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955); see *Lange–Kessler v. Department of Education of the State of New York*, 109 F.3d 137, 1997 WL 134409 (2nd Cir. March 26, 1997) (finding a rational connection between education requirements for license to become a midwife and state's interest in protecting health and safety of mothers and children).

The issue before the Court is whether the CBBC regulations requiring 1600 hours of instruction in specific methods and techniques of cosmetology violate plaintiff's due process rights. The Court does not address the issues whether California can require licenses for hairbraiders or whether they can require schooling and a licensing examination prior to allowing African hair stylists to perform their craft. These two issues are so clearly within the legislature's prerogative that the Court will not entertain challenges to them.

On the issue of the legitimacy of the CBBC's required curriculum, plaintiff argues that since the required cosmetology courses contain no instruction on African hair styling, there is no rational reason why they should be required in order to perform African hair styling. Defendants respond that the required cosmetology curriculum contains instruction in health and safety, hazardous substances, bacteriology, anatomy, physiology, disinfection, and sanitation.[7] Requiring people who manipulate hair to have instruction in hygiene and sanitation, defendants contend, is rationally related to protecting the health, safety and welfare of California citizens. Plaintiff responds that African hair

stylists do not shampoo, wet, or use any chemicals on clients' hair. Their method of hair styling simply involves physical manipulation of the hair. Since they use no chemicals, they argue that they have no need for instruction in disinfection and sanitation. Moreover, the instruction on disinfection and sanitation only comprises four percent of the required curriculum, so it would be unreasonable to require African hair stylists to attend cosmetology school for this one kernel of knowledge.

Defendants rely on *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), in which the Supreme Court upheld a Kansas statute which prohibited anyone from engaging "in the business of debt adjusting" except as incident to "the lawful practice of law." This effectively required all debt adjusters to be licensed attorneys. Debt adjusters who were not attorneys challenged the constitutionality of the law. The Supreme Court noted that courts should not "substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." *Id.* at 730, 83 S.Ct. at 1031. The court explained that states "have the power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law." *Id.* at 730–31, 83 S.Ct. at 1031. The majority did not mention rational basis review, but Justice Harlan concurred "in the judgment on the ground that this state measure bears a rational relation to a constitutionally permissible objective." *Id.* at 733, 83 S.Ct. at 1032.

Defendants do not argue that most of the CBBC curriculum requirements bear any rational relationship to a legitimate state objective.[8] For instance, they do not contend that

7. The vast majority of the required curriculum is devoted to topics such as manicures, pedicures, eyebrow arching and removal, facials, makeup, hair coloring, bleaching, permanent waving, chemical straightening, chemicals, press and curl, haircutting, scalp and hair treatments, cosmetology chemistry, thermal styling, theory of electricity in cosmetology, and wet hair styling. Cal.Code Reg. § 950.2. Of the 1600 required course hours, only 65 hours are required on

health and safety, hazardous substances, bacteriology, anatomy, physiology, disinfection and sanitation. Cal.Code Reg. § 950.2.

8. Although they do not raise it in their moving papers, in their reply, defendants argue that the California legislature decided to define cosmetology broadly to include "various means of treating hair, massaging, cleaning or stimulating the scalp, removing superfluous hair, manicures,

the required curriculum in manicures, pedicures, eyebrow arching and removal, facials, makeup, hair coloring, bleaching, permanent waving, chemical straightening, chemicals, press and curl, haircutting, scalp and hair treatments, cosmetology chemistry, thermal styling, theory of electricity in cosmetology, and wet hair styling are rationally related to legitimate state objectives. These topics comprise 935 hours of the 1600 hour required curriculum. Defendants argue that instruction in sanitation and hygiene-related topics is necessary to protect the health of its citizens. The CBBC-required curriculum contains 65 hours of instruction in health & safety, hazardous substances, bacteriology, anatomy, physiology, disinfection and sanitation.[9] These 65 hours represent only four percent of the hours required for completion of cosmetology school.

Even if the Court were to assume that these 65 hours are rationally related to the state's interest in protecting the health and safety of its citizens, this education is one small part of a curriculum which plaintiff contends is 96% useless to her. To take an extreme example, the state could rationally believe that food preparers need instruction on hygiene, sanitation and disinfection prior to being allowed to prepare food in public schools. It would be irrational however, to require them to go to cosmetology school, even though they might benefit from the 65 hours related to health, hygiene and sanitation. Ninety-six percent of the curriculum would be irrelevant to the occupation for which they would be seeking licensure. Plaintiff in this suit contends that this is exactly what is happening to her. She does not provide manicures, pedicures, eyebrow waxing, dying, tinting, bleaching, wet styling,

makeup or any of the other techniques which are taught in cosmetology school. Plaintiff argues that she is being lumped in with cosmetologists and barbers simply because she touches people's hair.

In March 1996, a Joint Legislative Sunset Review Committee (JLSRC) reviewed the CBBC and concluded that the number of hours and required curriculum erected an artificial barrier to individuals seeking to enter the barbering and cosmetology professions.[10] The JLSRC further found "no evidence provided which justifies the need for lengthy training in these particular areas of specialty," and that there was "little evidence" to support the need for a licensing examination. Plaintiff contends that these findings demonstrate a fortiori that there is no rational relationship between the required curriculum and legitimate state objectives.

The Court finds that plaintiff has adequately alleged that there is no rational connection between the vast majority of the CBBC's required curriculum and a legitimate government objective, and that it acts as an barrier to the entry of African hair stylists into their chosen profession. For this reason, defendants' motion to dismiss plaintiff's claims for violation of the federal due process clause is DENIED.

### 2. California Due Process Claim

California courts interpret the due process clause of the California Constitution as coextensive with the federal constitution on the issue of economic due process.

> As we understand current doctrine, judicial examination of a statute under economic due process attack is completed when any fact or facts appear which the Legislature might rationally have accepted

---

pedicures, facials and makeup," because it would have been too onerous to separately regulate each profession. While this may be true, it misses the point of plaintiff's argument. Plaintiff does not argue that she does not fit within the literal meaning of the BCA. Instead, Plaintiff argues that by enforcing the CBBC's regulations against hairbraiders when those regulations are addressed solely to techniques employed by "mainstream" hairstylists, her due process rights are violated. The alleged violation is not the BCA itself, but the regulations enacted by the CBBC requiring 1600 hours of instruction in

topics and methods which are of no relevance to African hair styling.

9. The remaining hours are devoted to elective courses, some of which include communications skills, professional ethics, salesmanship, decorum, record keeping, and client-service record cards. Cal.Code Reg. § 950.2.

10. Joint Legislative Sunset Review Committee Findings and Recommendations, Review and Evaluation of the Board of Barbering and Cosmetology, p. iii (March 1996).

as the basis for a finding of public interest.... On this point federal and California doctrines appear to be parallel.

*Doyle v. Board of Barber Examiners*, 219 Cal.App.2d 504, 514, 33 Cal.Rptr. 349 (1963).

The constitutionality of the Cosmetology Act, the predecessor to the BCA, was challenged previously in *Whitcomb v. Emerson*, 46 Cal.App.2d 263, 115 P.2d 892 (1941). Plaintiff engaged in "massaging, stimulating or beautifying the face, neck and upper part of the human body by means of the hands and use of oil lotions[.]" *Id.* at 265, 115 P.2d 892.[11] The Board of Cosmetology threatened to require her to obtain a license and to enforce its regulations on her. The California Court of Appeals stated that

> The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with, or abridgement of, such right is an invasion thereof and a restriction of the liberty of the citizen as guaranteed by the Constitution.

*Id.* at 273, 115 P.2d 892. The court noted that states may legitimately require certain qualifications for a profession, and that such regulations are unconstitutional only when "they have no relation to such calling or profession, or are unattainable by such reasonable study and application[.]" *Id.* at 273–74, 115 P.2d 892. The court continued:

> If, then, it is lawful for all to endeavor to preserve or to regain those treasured charms of yesteryear, it must also fall within the legal protection of the constitutional guarantees for those skilled in appropriate arts to serve the needs of those who seek the enhancement or preservation of personal beauty, subject only to the right of the state to impose such reasonable regulations as will protect the health, safety, morals and general welfare of the public.

*Id.* at 275, 115 P.2d 892. The court proceeded from a strong presumption of constitutionality of the statute. The court then noted that "in order to secure her right to labor as she chooses she must become a 'hairdresser' in fact and to that end practice, have experience in, and pass an examination in shampooing, waving, coloring, dressing and care of the hair, or in the alternative starve or go to jail." *Id.* at 277, 115 P.2d 892. The court could "find nothing in the relation of facial massage with the arts of hair dressing which suggests that the public morals, safety, health or general welfare demands that the masseuse must be trained in those arts." *Id.* The court concluded that while the occupations specified in the Cosmetology Act could be subjected to legitimate regulation, there was no reasonable connection between regulating cosmetology and regulating facial massaging, and accordingly found the statute unconstitutional as applied to plaintiff. *Id.*

*Whitcomb* has never been overruled, but it was criticized *in Varanelli v. Structural Pest Control Board*, 1 Cal.App.3d 217, 222, 81 Cal.Rptr. 492 (1969). In *Varanelli*, the Court of Appeals noted that *Whitcomb* was "decided in an era less receptive to economic legislation." *Id.* The court explained that the

> current doctrines of judicial review of the reasonableness of regulatory legislation is that judicial examination of a statute under economic due process attack is completed when any fact or facts appear, or may be hypothesized, which the Legislature might rationally have accepted as the basis for a finding of public interest.

*Id.* Most recently, the California Court of Appeals has stated that the "Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal." *In re Arthur W.*, 171 Cal.App.3d 179, 185, 217 Cal.Rptr. 183 (1985).

The Court need not reach the specific issue of whether *Whitcomb* is still good law. Since the California and federal due process clauses are co-extensive, the Court DENIES defendants' motion to dismiss plaintiff's claims under the California due process clause for the same reasons.

### E. Plaintiff Cornwell's Equal Protection Claims

#### 1. Federal Equal Protection Claim

■ The equal protection clause requires that "all persons similarly situated should be

---

11. The BCA now explicitly includes facials and facial massages within the definition of cosmetology. Cal. Bus. & Prof.Code §§ 7316(b)(2), (b)(3), & (c).

treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Defendants argue that the statutory scheme in the BCA treats all people alike by requiring everyone to qualify for and pass a licensing examination. "Plaintiffs are thus being treated exactly the same as all other persons who desire to engage in the practice of cosmetology." Def. Mem. P & A's, p. 20. As the Supreme Court has noted "[s]ometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike[.]" *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971); *see* Lawrence H. Tribe, *American Constitutional Law* 1438 (2nd ed.1988) ("equality can be denied when government fails to classify, with the result that its rules or programs do not distinguish between persons who, for equal protection purposes, should be regarded as differently situated"). For instance, in *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the Supreme Court struck down an Ohio statute which regulated how political parties could get on the ballot. Although the statute was written in neutral terms, the burdens it imposed on new political parties, such as requiring petitions signed by 15% of the voters who voted in the last election, functioned to limit elections to the two dominant political parties. The regulations violated the equal protection clause even though they were facially neutral because they had a discriminatory effect.

Similarly, in *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), there was a neutral ordinance which required all laundries not housed in brick buildings to obtain permits, ostensibly out of a fear of fire. As applied, however, the statute effectively excluded Chinese laundry owners from operating their businesses.

Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.

*Id.* at 373–74, 6 S.Ct. at 1073.

▮ In the instant case, it is not clear from the language of the BCA that it applies to African hair styling. The statute employs very broad language, defining cosmetology to include "arranging," "brushing," and "beautifying" the hair of any person. These broad terms can be interpreted to include the physical manipulation of the hair involved in African hair styling and hairbraiding. It is a discretionary decision on the part of the Attorney General and the CBBC to apply the BCA to hairbraiders and African hair stylists. Plaintiffs real challenge is to the way in which the CBBC and the Attorney General enforce and administer the statute. The CBBC has enacted all of the regulations setting forth the curriculum requirements at cosmetology schools. These requirements contain no instruction on African hair styling, but extensive instruction in "mainstream" hair styling. At the same time, the Attorney General has issued an opinion that the BCA applies to African hair styling and hairbraiding. 65 Op. Atty. Gen. 284 (May 6, 1982).[12] Plaintiff contends that the combination of these two requirements violates the equal protection clause. The Attorney General singled out a discrete group—African hair stylists—and subjected them to the requirements of the BCA. The CBBC's regulations allegedly bear no rational relationship to the performance of African hair styling. The effect of these regulations is to force African

---

**12.** The Attorney General (AG) was asked by a member of the California legislature to issue an advisory opinion on whether hairbraiding was included within the practice of cosmetology, and whether it was constitutional to subject hairbraiders to the California Regulations relating to cosmetology. The AG first concluded that hairbraiding constituted "arranging" and "beautifying" a person's hair within the meaning of Cal. Bus. & Prof Code § 7321(a). The AG then ana-lyzed the California Court of Appeals decision in *Whitcomb* and concluded that it was no longer good law in light of *Doyle* and *Varanelli.* The AG concluded that the legislature's goal in enacting the BCA was to standardize the skills of cosmetology practitioners, and that even if most of the skills taught in cosmetology school were not relevant to hairbraiding, there was still a rational basis for requiring the cosmetology curriculum.

hair stylists out of business in favor of mainstream hair stylists and barbers.

Plaintiff and defendants agree that under an equal protection analysis, the BCA must be subjected to rational basis review. "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, —— U.S. ——, ——, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996).[13]

[E]ven in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be obtained.... In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale seems tenuous.

*Id.* at ——, 116 S.Ct. at 1627. After citing several examples of cases in which the Su-

preme Court had upheld state statutes,[14] the Supreme Court continued:

By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law.

*Id.* Although at trial, the burden would be on plaintiff to establish that there is no rational connection between the regulations and their asserted purpose, *see FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314–15, 113 S.Ct. 2096, 2101–02, 124 L.Ed.2d 211 (1993), in the context of a motion to dismiss, the Court must take all allegations in the complaint as true, must draw all inferences in favor plaintiffs, and must construe the complaint in the light most favorable to plaintiffs. *NL Industries*, 792 F.2d at 898.

In the instant case, the Court looks to see whether there is a rational basis for requiring African hair stylists to receive the 1600 hours of technical training required by the CBBC.[15] *See* Cal.Code Reg. § 950.2. The ob-

---

**13.** Query whether the Attorney General and CBBC's decision to apply the BCA to African hair stylists might be a suspect classification. The alleged classification of African hair stylists may be a classification based on race and national origin which are clearly suspect classifications. *See Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254–55 (rational basis review "gives way [to strict scrutiny], however, when a statute classifies by race, alienage, or national origin"). Most African hair stylists, as the name would suggest, either learned their techniques in Africa or learned the techniques from ancestors who resided in Africa. Moreover, African hair styling is unique to Africans because of the texture of their hair, and is a reaction against mainstream hair styling which subjects their hair to harsh chemical treatments which damage the hair. African hair styling is performed almost exclusively by and for African–Americans. Further, many African–Americans view African hair styles as an expression of their self-identity and cultural heritage.

**14.** *See New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (tourism benefits justified classification favoring pushcart vendors of certain longevity); *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (assumed health concerns justified law favoring optometrists over opticians); *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949) (potential traffic hazards justified exemption of vehicles advertising owner's products from general advertising ban); *Kotch v. Board of*

*River Port Pilot Comm'rs for Port of New Orleans*, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947) (licensing scheme that disfavored persons unrelated to current river boat pilots justified by possible efficiency and safety benefits of a closely knit pilotage system); *but see United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) (striking down statute withholding food stamps from households containing unrelated people); *O'Brien v. Skinner*, 414 U.S. 524, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974) (striking down New York statute allowing incarcerated people to vote by absentee ballot only if incarcerated in county where not resident); *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (invalidating as irrational Alaska statute which distributed natural resources revenue based upon how long a resident had lived in the state); *Cleburne*, 473 U.S. 432, 105 S.Ct. 3249 (striking down as irrational statute requiring group home for mentally retarded to obtain a special use permit). In *Romer* itself, the Supreme Court struck down a Colorado statute denying homosexuals any protected status as a minority. The statute was targeted at a discrete group and was justified by no legitimate state interest. *Romer*, —— U.S. at ——, 116 S.Ct. at 1629.

**15.** The Court does not reach the issues of whether 1600 hours of training can be required prior to licensure or whether a license can be required prior to practicing African hair styling The Court only addresses whether the specific training re-

ject to be obtained, according to the government, is a profession of hair care professionals who understand hygiene and sanitation. While 65 hours of the curriculum are geared towards this end, at least 935 hours are not. Almost one thousand hours of training are required in the techniques of "mainstream" hair styling and cosmetology. The object of this training is to produce better "mainstream" cosmetologists, not to promote hygiene and sanitation. The Court is left with the dilemma of whether a legitimate reason for four percent of the required curriculum makes the entire curriculum rationally related to a legitimate government interest. The Court cannot find as a matter of law that it does. This places an almost insurmountable barrier in front of anyone who seeks to practice African hair styling. They are required to spend nine months attending a cosmetology school, at a cost of $5,000–$7,000, learning skills, 96% of which, they will never use. Plaintiff has adequately alleged that there is no rational connection between the CBBC's required curriculum and the practice of African hair styling.

This case is similar to *Cleburne*, in which the city of Cleburne interpreted its zoning ordinance to require a special use permit for a group home for the mentally retarded. *Cleburne*, 473 U.S. at 436–37, 105 S.Ct. at 3252–53. The zoning ordinance provided that a special use permit was required for the construction of "hospitals for the insane or feeble-minded, or alcoholic [sic] or drug addicts, or penal or correctional institutions." *Id.* at 436, 105 S.Ct. at 3252. The city considered a group home for the mentally retarded a "hospital for the feeble-minded." The city then denied a permit to the group home. *Id.* at 437, 105 S.Ct. at 3252–53. The Supreme Court applied rational basis review to the city's interpretation of its zoning ordinance.

> The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.

quired by the CBBC in its 1600 hour curriculum is rationally related to its purported government

*Id.* at 440, 105 S.Ct. at 3254. The court noted that limitations on the functioning of mentally retarded individuals is a legitimate reason for state classification. For instance, the state could provide specialized educational programs for the mentally retarded. *Id.* at 442–43, 105 S.Ct. at 3255–56. In the course of its rational basis review, the court noted that the city did not require special use permits for apartment houses, dormitories, hospitals (other than for the insane, feeble-minded, alcoholics or drug addicts), or nursing homes. *Id.* at 447, 105 S.Ct. at 3258. By insisting on a permit for the group home for the mentally retarded, the city was treating this group differently. The city provided no legitimate reason for this differential treatment, so the court invalidated the statute as applied to a group home for the mentally retarded. *Id.* at 448–50, 105 S.Ct. at 3258–60.

In the instant case, the CBBC and the Attorney General have interpreted the Barbering and Cosmetology Act to apply to African hair stylists and hairbraiders. It is this decision, as reflected in 65 Op. Atty. Gen. 284 and the CBBC's enforcement of the BCA against African hair stylists, that plaintiff challenges as unconstitutional. Just as there was no problem in *Cleburne* with applying the zoning ordinance to hospitals for the insane, there is no problem in this case with applying the BCA to barbers and "mainstream" hair stylists. It is the extension of the statute to a group for which the statute was not designed that plaintiffs in the instant case and in *Cleburne* challenge. Since the CBBC regulations require instruction that is unrelated to the practice of African hair styling, plaintiff argues that it is irrational to subject her to these requirements. Plaintiff suggests that just as the application of the zoning ordinance in *Cleburne* was a covert attempt to prevent a group home for the mentally retarded from being located within the community, the application of the BCA to African hair stylists is a covert attempt to prevent or minimize the practice of African hair styling in favor of "mainstream" hair styling.

interest.

The Court is unaware of what evidence there is to support this proposition, but if plaintiff comes forward with evidence of intentional discrimination, the enforcement of the statute could constitute a violation of the equal protection clause. *See Yick Wo,* 118 U.S. at 367, 6 S.Ct. at 1069–70. The Court notes that the Joint Legislative Sunset Review Committee concluded that the CBBC's required curriculum erected an artificial barrier to individuals seeking to enter these professions, and that there was no evidence that such lengthy and detailed training was justified.

For these reasons, the Court DENIES defendants' motion to dismiss plaintiff's federal equal protection claim. Plaintiff has stated a claim that there is no rational connection between 1535 hours of the 1600 hour required cosmetology curriculum and the practice of African hair styling.

## 2. California Equal Protection Claim

"[T]he constitutional requirement that state regulation of a profession bear a rational relationship to a legitimate state interest imposes upon the courts the duty of fairly testing whether the state classification scheme is consistent with the asserted state interest." *Warden v. State Bar of California,* 53 Cal.App.4th 510, 62 Cal.Rptr.2d 32 (1997). Defendants argue that the California equal protection claim must be dismissed for the same reasons as the federal equal protection claim. Similarly, plaintiff also conflates the federal and state equal protection analyses. For the same reasons, defendants' motion to dismiss the California equal protection claim is DENIED.

## IV. Conclusion

Plaintiff Cornwell may maintain an action for prospective injunctive relief against the state officials responsible for administering and enforcing the Barbering and Cosmetology Act. Plaintiff cannot, however, maintain suit against the Department of Consumer Affairs or the Board of Barbering and Cosmetology. Accordingly, the DCA and the CBBC are DISMISSED without leave to amend.

The Court cannot abstain from adjudicating Dr. Cornwell's claims against the members of the CBBC on *Younger* grounds because she is not a party to an ongoing state proceeding. The Court must abstain, however, from adjudicating AHNHCA's claims against the members of the CBBC because the injunctive relief sought would interfere with the state proceedings in which one of AHNHCA's members is involved. For this reason, plaintiff AHNHCA's claims are dismissed with 45 days leave to amend.

Defendants' motion to dismiss plaintiff's federal and California due process and equal protection claims is DENIED because the Court finds that plaintiff has adequately alleged that there is no rational relationship between the 1600 hours of training required by the CBBC and the practice of African hair styling.

IT IS SO ORDERED.