Joanne CORNWELL, American Hairbraiders and Natural Haircare Association, Plaintiffs,

v.

Ron JOSEPH; Pamela Reed; Susan Harrigan; and Daniel Lungren, Attorney General of California, all in their official capacities, Defendants.

No. Civ. 97–0138–B (POR).

United States District Court, S.D. California.

June 19, 1998.

Donna G. Matias, Institute for Justice, Washington, DC, for plaintiffs.

Susan A. Ruff, San Diego, CA, for defendants.

## ORDER DENYING DEFENDANT LUNGREN'S MOTION FOR JUDGMENT ON THE PLEADINGS

BREWSTER, District Judge.

### I. Introduction

Plaintiffs Dr. JoAnne Cornwell and the American Hairbraiders and Natural Haircare

Association (AHNHA) filed this action against California state officials, alleging that the enforcement of California's licensing requirement for hairbraiders violates the due process, equal protection and privileges and immunities clauses of both the United States and California Constitutions. The Court has jurisdiction over the federal claims pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

## II. Background

Plaintiffs filed their complaint on January 28, 1997. On March 27, 1997, the defendants filed motions to dismiss. On May 2, 1997, the Court dismissed claims against the Department of Consumer Affairs and the California Board of Barbering and Cosmetology based upon their Eleventh Amendment immunity. The Court also granted the motion to dismiss as to Plaintiff AHNHA, with forty-five days leave to amend, and denied the motion to dismiss as to Plaintiff Cornwell. That order and a more complete description of this case are found at *Cornwell v. California Board of Barbering and Cosmetology*, 962 F.Supp. 1260 (S.D.Cal.1997). On June 2, 1997, Plaintiffs filed a first amended complaint naming eleven defendants. No motions to dismiss the first amended complaint were filed. On June 12, 1998, the parties stipulated to a court order that reduced the number of defendants to four so as to reflect organizational changes in California law.[1]

Plaintiff Dr. Cornwell is the owner of Sisterlocks, a sole proprietorship, which specializes in African hair styling. Plaintiff AHNHA is a non-profit nationwide organization dedicated to protecting the rights of hairbraiders and natural hair stylists. Its members are individuals and salons engaged in the business of African hair styling and natural hair care.

Defendant Ron Joseph is the Director of the California Department of Consumer Affairs (DCA). DCA is established as a State and Consumer Services Agency by California Business and Professions Code § 100 to regulate various occupations. The DCA is responsible for establishing minimum qualifications and standards of competency, issuing licenses, and ensuring compliance with regulations authorized under the California Business and Professions Code. Within the DCA, Defendant Pamela Reed is the Program Administrator for the Barbering and Cosmetology Program and Defendant Susan Harrigan is the Assistant Program Administrator.

Defendant Daniel E. Lungren is the Attorney General for the State of California. Pursuant to California Business and Professions Code § 321, the Attorney General has the authority to seek an injunction against any acts or practices in violation of any state law that the director of a regulatory agency finds may cause harm to consumers. Plaintiffs are suing these defendants in their official capacities for enforcing California's barbering and cosmetology laws and regulations.

On January 13, 1998, Defendant Lungren filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Under the Barbering and Cosmetology Act, it is unlawful for a person to engage in barbering, cosmetology, or electrolysis for compensation without a valid license. CAL. BUS. & PROF.CODE § 7317. On May 16, 1982, the Attorney General issued an opinion that the practice of African hair braiding falls within the definition of "cosmetology" and requires a cosmetology license. 65 Op.Atty. Gen. 284 (May 6, 1982).

Plaintiffs argue that the application of the licensing requirement to African hair styling violates their state and federal constitutional rights to substantive due process, equal protection, and the rights guaranteed by the privileges and immunities clauses of the federal and state constitutions. Plaintiffs seek a declaratory judgment that the licensing requirement is unconstitutional as applied to African hair styling, a permanent injunction against the enforcement of the statute and its attendant regulations, and attorney's fees and costs. In its May 2, 1997 order, the Court found that Plaintiffs adequately had alleged that there is no rational relationship

---

1. On January 1, 1998, portions of the California Barbering and Cosmetology Act expired, including the authorization for the California Board of Barbering and Cosmetology (CBBC). The order dismissed the complaint as to the seven board members of the now-defunct CBBC. The order also changed the title of Defendants Reed and Harrington and substituted in Defendant Ran Joseph for former California Department of Consumer Affairs Director Marjorie Berte.

between the extensive training requirements and the practice of African hair styling. *See Cornwell*, 962 F.Supp. at 1273. That finding is equally applicable to both Plaintiffs' allegations made in their first amended complaint.

### III. Jurisdiction Over State Law Claims

 · In addition to their federal claims, Plaintiffs allege that Defendants' conduct violates their ·rights under the due process, equal protection and privileges and immunities clauses of the California Constitution. The Eleventh Amendment precludes federal supplemental jurisdiction over state law claims against state officers sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the [extra-jurisdictional cause of action]." FED.R.CIV.P. 12(h)(3). Therefore, the Court, *sua sponte*, dismisses Plaintiffs' state-law causes of action.

### · IV. The Attorney General's Motion

#### A. Standard of Law

 Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for· judgment on the pleadings." When Rule 12(c) is used to raise the defense of failure to state a claim, the motion for judgment on the pleadings faces the same test as a motion under Federal Rule of Civil Procedure 12(b)(6). *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988). The complaint should not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

#### B. Eleventh Amendment Immunity

The Attorney General argues that he is entitled to judgment on the pleadings on the basis of Eleventh Amendment immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. The Supreme Court has determined that suits against a state by its own citizens are barred either by the Eleventh Amendment or principles of sovereign immunity. *See Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 37, 57 n. 8, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989); *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). However, Courts have long held that the Eleventh Amendment does not preclude suits against state officers for prospective injunctions of the implementation of state policies that contravene federal law. In *Ex Parte Young*, the Supreme Court wrote that "the use of the name of the State to enforce an unconstitutional act ... [is] without the authority of [the State].... It is simply an illegal act upon the pan of the state official in attempting to use the·name of the State to enforce a legislative enactment which is void because unconstitutional." *Ex Parte Young*, 209 U.S. 123, 159, 28 S.Ct. 441; 52 L.Ed. 714 (1908). In its·May 2, 1997 order, this Court determined, citing *Ex Parte Young*, that Plaintiffs may sue the named defendant state officers to enjoin the application of California's barbering and cosmetology licensing requirement to African hairbraiders. *See Cornwell*, 962 F.Supp. at 1266.

Acknowledging that Plaintiffs may seek relief from some state officers, the Attorney General now argues that he is not an appropriate defendant because the cosmetology licensing requirement is enforced by the Director of Consumer Affairs, not the Attorney General. The Supreme Court explained in *Ex Parte Young* that "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157, 28 S.Ct. 441. At the same time, the Court acknowledged that the connection with enforcement can arise "out of the general law." *Id.*

California Business and Professions Code § 321 provides: "Whenever it appears to the [DCA] director that the interests of the consumers of this state are being damaged ... [by] violation of any law of this state, or any federal law, the [DCA] director or any officer or employee designated by their director, or the Attorney General, may commence legal proceedings in the appropriate forum to enjoin such [violations] and may seek other appropriate relief on behalf of such consumers." The Attorney General argues that he is not sufficiently connected with the enforcement of state consumer laws because he can only act at the direction of the DCA Director, who is already a defendant in this case.

The question of whether a *general* obligation to enforce state law satisfies the *Ex Parte Young* "connection" requirement has been the subject of much disagreement. *See, e.g.,* CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3524 notes 60, 61 (2d ed.1984 and 1998 Supp.). However, exhaustive interpretation of conflicting case law is unnecessary in the instant case because compelling guidance is offered by *Ex Parte Young* itself: the California Attorney General's connection with the enforcement of the cosmetology licensing requirement is sufficiently similar to the connection between the state officer in *Ex Parte Young,* the Attorney General of Minnesota, and the contested statute in that case.

*Ex Parte Young* arose in connection with a lawsuit filed by shareholders of Northern Pacific Railway in federal court against the Minnesota Attorney General Edward T. Young to enjoin as unconstitutional the enforcement of the state's railroad rate regulations. The district court issued a preliminary injunction, but the Attorney General continued to enforce the regulations and was cited for contempt and remanded into custody. Young petitioned for a writ of habeas corpus, but the Supreme Court rejected his petition and reached its landmark decision that a state officer could be enjoined from enforcing state policies that violate federal law. In discussing Young's connection to the enforcement of the railroad rate regulations, the Court noted:

> By § 1960 of the Revised Laws of 1905 it is also provided that the attorney general shall be ex officio attorney for the railroad

commission, and it is made his duty to institute and prosecute all actions *which the commission shall order brought,* and shall render the commissioners all counsel and advice necessary for the proper performance of their duties. It is said that the attorney general is only bound to act when the commission orders action to be brought, and that § 5 of the commodity act (April 18, 1907) expressly provides that no duty shall rest upon the commission to enforce the act, and hence no duty other than that which is discretionary rests upon the attorney general in that matter. The provision is somewhat unusual, but the reasons for its insertion in that act are not material, and neither require nor justify comment by this court.

*Ex Parte Young,* 209 U.S. at 161, 28 S.Ct. 441 (emphasis added).

In *Ex Parte Young,* the Minnesota Attorney General enforced the railroad rates as the representative of, and at the direction of, the railroad commission. Unlike the DCA in the instant case, the Minnesota railroad commission itself did not have the authority to initiate legal proceedings, but that distinction is immaterial to a determination of the Attorney General's connection to enforcement. Therefore, it is unnecessary in the instant case to rely on the Attorney General's general power to enforce state law to satisfy the connection requirement, as his delegatee authority to enforce consumer protection laws under Business and Professions Code § 321 is sufficient to satisfy the demands of *Ex Parte Young.*

■ Although the DCA Director may be the primary enforcer of the licensing requirement, an injunction might not be viable if it did not apply to the Attorney General. The Court cannot enjoin DCA Director Joseph from expressing an opinion that it "appears" to him that the interests of the consumers would be damaged without the application of the cosmetology licensing requirement to African hairbraiders, an opinion that could empower the Attorney General to act under § 321. If Plaintiffs are to enjoin successfully the application of the licensing requirement to African hairbraiders, they must enjoin all state officers who could *enforce* it. Because

the Attorney General is among the potential enforcers, he is a proper defendant in this case.

The Court is confident that its holding strikes a proper balance between the state sovereignty and the supremacy of the United States Constitution. The purpose of the "connection" requirement is not to protect a state officer, but to protect the sovereignty of the states themselves. Although the "connection" requirement must be applied to each state officer defendant, the requirement's paramount objective of protecting state sovereignty has already been considered and trumped where, as here, a court has already determined that a plaintiff may proceed against other state officers (in the instant case, the officers within the Department of Consumer Affairs). Therefore, when a court balances constitutional interests in deciding a *close* question of "connection," the inclusion of an *additional* state officer as a defendant does not threaten state sovereignty.

Meanwhile, the exclusion of an arguably relevant state officer could potentially render this lawsuit futile. If DCA officials are enjoined from enforcing the cosmetology licensing requirement against hairbraiders but the Attorney General could by some means enforce the requirement, Plaintiffs would be forced to return to Court to seek further injunctive relief. Federal constitutional interests would have been wastefully impeded with very little concomitant benefit to state sovereignty. Therefore, while the "connection" requirement of *Ex Parte Young* must be applied to each state officer defendant, once any one defendant is deemed a proper defendant, close calls as to other defendants should be decided in favor of inclusion.

### C. Justiciability

▪ Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies. The Supreme Court has established three constitutional standing requirements: injury, causation, and redressability. See *Northeastern Fla. Contractors v. Jacksonville,* 508 U.S. 656, 663–664, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). The Attorney General argues that Plaintiffs have failed to establish the second requirement, causation. The Court finds that the Attorney General's connection to enforcement of the cosmetology licensing requirement establishes Plaintiff's standing to bring suit against the Attorney General. Because the cosmetology licensing requirement is currently in force and because Plaintiffs' requested relief would redress their alleged constitutional injuries, all of the constitutional requirements for standing are satisfied.

### IV. Conclusion

For the reasons set forth herein, the Attorney General's motion for judgment on the pleadings is denied.

IT IS SO ORDERED.