**Michael MROZ and Susan Mroz, Plaintiffs,**

v.

**HOALOHA NA EHA, INC.; Na Hoaloha Ilima, LLC; Michael Moore; Timothy Moore; Robert Aguiar; and Kevin Butler, Defendants.**

No. CIV. 04–00078 ACK/KS.

United States District Court, D. Hawai'i.

Aug. 1, 2005.

920

Chad M. Iida, Jess H. Griffiths, Robert Carson Godbey, Godbey Griffiths Reiss Chong, Honolulu, HI, Jack R. Naiditch, Paia, HI, for Plaintiffs.

Gary G. Grimmer, John P. Manaut, Carlsmith Ball, Kaiulani E. Kidani, Lynne T. Toyofuku, Marr Hipp Jones & Wang LLLP, Becky T. Chestnut, John Y. Yamano, Wendy F. Hanakahi, McCorriston Miller Mukai MacKinnon LLP, Paul Alston, Thomas E. Bush, Alston Hunt Floyd & Ing, Honolulu, HI, for Defendants.

### ORDER GRANTING DEFENDANTS HOALOHA NA EHA, INC. AND NA HOALOHA ILIMA, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KEVIN BUTLER–MROZ'S FIRST AMENDED CROSS–CLAIM AND DENYING M. MOORE, T. MOORE, AND AGUIAR'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS 1, 2, 4, 5, AND 6 OF KEVIN BUTLER–MROZ'S FIRST AMENDED CROSS–CLAIM

KAY, District Judge.

### PROCEDURAL HISTORY

On February 3, 2004, Plaintiffs filed their Complaint. The Counts alleged are as follows: Count 1—Breach of Contract Under the First Agreement; Count 2—Breach of Contract Under the Second Agreement; Count 3—Fraud; Count 4—Breach of Fiduciary Duty to Plaintiffs; Count 5—Unjust Enrichment; Count 6—Fraudulent Concealment; Count 7—Civil Conspiracy to Gain Sole Control and Ownership of The Old Lahaina Café & Luau and Whaler's Pub Businesses; Count 8—Derivative Claims on Behalf of New Hoaloha.

On March 30, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. each filed an Answer to the Complaint.

On April 1, 2004, Defendant Kevin Butler–Mroz filed an Answer to Plaintiffs' Complaint and a Cross-claim against Defendants Na Hoaloha Ilima, LLC; Hoaloha Na Eha, Inc.; Michael Moore; Timothy Moore; and Robert Aguiar.

On April 2, 2004, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed an Answer to Plaintiffs' Complaint.

On April 23, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. each filed an Answer to Defendant Kevin Butler–Mroz's Cross-claim.

On April 26, 2004, Plaintiffs and Defendants filed Scheduling Conference Statements.

On May 3, 2004, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Reply to Defendant/Cross–Claimant Kevin Butler–Mroz's Cross-claim.

On September 14, 2004, Defendant Kevin Butler–Mroz filed his First Amended Cross–Claim against Defendants Michael Moore; Timothy Moore; Robert Aguiar; Na Hoaloha Ilima, LLC; and Hoaloha Na Eha, Inc.

On September 24, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Ltd. filed an Answer to Defendant Kevin Butler–Mroz's First Amended Cross–Claim; Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Ltd. filed a Cross–Claim against Defendant Kevin Butler–Mroz; and Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Ltd. filed a Counter–Claim against Plaintiffs.

Also on September 24, 2004, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Reply to Defendant/Cross–Claimant Kevin Butler–Mroz's First Amended Cross–Claim; filed a Cross–Claim against Kevin Butler–Mroz; and filed a Counter–Claim against Plaintiffs.

On October 6, 2004, Defendant/Cross–Claimant Kevin Butler–Mroz filed an Answer to Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Cross–Claim and an Answer to Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Ltd.'s Cross–Claim.

On October 14, 2004, Plaintiffs filed an Answer to Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Counter–Claim and an Answer to Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Ltd.'s Counter–Claim.

On December 7, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. filed a Motion for Summary Judgment on Plaintiffs' Complaint.

On January 27, 2005, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Statement of No Opposition to Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Ltd.'s Motion for Summary Judgment on Plaintiffs' Complaint.

Also on January 27, 2005, Plaintiffs filed an Opposition to Motion for Summary Judgment.

On February 3, 2005, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. filed a Reply to Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment.

Defendants Hoaloha Na Eha, Ltd. and Na Hoaloha Ilima, LLC's Motion for Summary Judgment was heard on February 14, 2005.

On February 22, 2005, this Court filed an Order denying in part and granting in part Defendants Hoaloha Na Eha, Ltd. and Na Hoaloha Ilima, LLC's Motion for Summary Judgment on Plaintiffs' Complaint.

On March 8, 2005, Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC filed their Motion for Partial Summary Judgment on

Kevin Butler–Mroz's Cross–Claim as well as a Concise Statement of Facts in Support of their Motion.

On March 10, 2005, Michael Moore, Timothy Moore, and Robert Aguiar filed their Substantive Joinder and Memorandum in Support of Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's Cross–Claim.

On March 30, 2005, Plaintiffs filed a Statement of No Position Regarding Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's Cross–Claim.

On March 31, 2005, Kevin Butler–Mroz filed a Cross–Motion for Partial Summary Judgment; a Memorandum in Support of his Cross–Motion and in Opposition to Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's Cross–Claim; and a Concise Statement of Facts. On April 5, 2005, Kevin Butler–Mroz also submitted the Declarations of Kevin Butler–Mroz and Ryther L. Barbin, Esq.

On April 6, 2005, this Court granted Kevin Butler–Mroz's Ex Parte Motion to file under seal Exhibit AA.

On April 7, 2005, Plaintiffs filed a Statement of No Position Regarding Kevin Butler–Mroz's Cross–Motion for Partial Summary Judgment. Also on April 7th, Hoaloha Na Eha, Ltd. and Na Hoaloha Ilima, LLC filed an Opposition to Kevin Butler–Mroz's Cross–Motion for Partial Summary Judgment and Reply to Kevin Butler–Mroz's Opposition to Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's Cross–Claim and a Response to the Separate and Concise Statement in Support of Kevin Butler–Mroz's Memorandum in Opposition to Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's Cross–Claim. Finally on April 7th, Michael Moore, Timothy Moore, and Robert Aguiar filed a Reply in Support of Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's Cross–Claim and an Opposition to Kevin Butler–Mroz's Cross–Motion for Partial Summary Judgment.

On April 13, 2005, Kevin Butler–Mroz filed a Reply in Support of Kevin Butler–Mroz's Cross–Motion for Partial Summary Judgment and a Separate and Concise Statement of Facts in Support of his Reply.

On April 18, 2005, a hearing was held regarding Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's Cross–Claim and on Kevin Butler–Mroz's Cross–Motion for Partial Summary Judgment.

Also on April 18th, Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC filed the Supplemental Declaration of John P. Manaut Submitting Excerpts from the April 7, 2005 Deposition of Kevin Butler–Mroz; Exhibits A and B. On April 20, 2005, Butler–Mroz submitted a Declaration of Thomas E. Bush in Response to the Supplemental Declaration of John P. Manaut. The filing of these supplemental declarations had been agreed to by the parties at the April 18th hearing.

On April 21, 2005, this Court filed an Order Denying Defendants Hoaloha Na Eha, Ltd. and Na Hoaloha Ilima, LLC's Motion for Partial Summary Judgment on Kevin Butler–Mroz's First Amended Cross–Claim and Denying Kevin Butler–Mroz's Cross–Motion for Partial Summary Judgment on Kevin Butler–Mroz's First Amended Cross–Claim.

On May 3, 2005, Kevin Butler–Mroz filed a Verification to his First Amended Cross–Claim.

On May 11, 2005, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Motion for Partial Dismissal of Butler–Mroz's Cross–Claim and Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC filed a Motion for Partial Dismissal of Defendants/Cross–Claim Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC from Counts 1–9 and 11–13 of the First Amended Cross–Claim Against Defendants Michael Moore, Timothy Moore, and Robert Aguiar, Hoaloha Na Eha, Inc., and Na Hoaloha Ilima, LLC.

On May 31, 2005, Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC filed a Joinder in Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Partial Dismissal of Butler–Mroz's Cross–Claim.

On June 22, 2005, Defendant Hoaloha Na Eha, Inc. filed a Statement of Support Re: Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Partial Dismissal of Butler–Mroz's Cross–Claim.

On July 1, 2005, Kevin Butler–Mroz filed a Motion for Rule 11 Sanctions against Hoaloha Na Eha, Inc., and Na Hoaloha Ilima, LLC and their counsel.

On July 5, 2005, Plaintiffs filed a Statement of No Position Regarding Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Partial Dismissal of Butler–Mroz's Cross–Claim.

On July 15, 2005, Kevin Butler–Mroz filed an Opposition to Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Partial Dismissal of Butler–Mroz's Cross–Claim. Kevin Butler–Mroz also filed an Opposition to Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Dismissal of Defendants/Cross–Claim Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC from Counts 1–9 and 11–13 of the First Amended Cross–Claim Against Defendants Michael Moore, Timothy Moore, and Robert Aguiar, Hoaloha Na Eha, Inc., and Na Hoaloha Ilima, LLC.

On July 21, 2005, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Reply in Support of their Motion for Partial Dismissal of Kevin Butler–Mroz's Cross–Claim and Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC filed a Reply in Support of their Motion for Partial Dismissal of Defendants/Cross–Claim Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC from Counts 1–9 and 11–13 of the First Amended Cross–Claim Against Defendants Michael Moore, Timothy Moore, and Robert Aguiar, Hoaloha Na Eha, Inc., and Na Hoaloha Ilima, LLC.

On August 1, 2005, a hearing was held on Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Partial Dismissal of Butler–Mroz's Cross–Claim and on Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion for Partial Dismissal of Defendants/Cross–Claim Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC from Counts 1–9 and 11–13 of the First Amended Cross–Claim Against Defendants Michael Moore, Timothy Moore, and Robert Aguiar, Hoaloha Na Eha, Inc., and Na Hoaloha Ilima, LLC.

### STANDARD

### I. Motion for Judgment on the Pleadings

Under the Federal Rules of Civil Procedure, Rule 12(h)(2), the defense of failure to state a claim upon which relief can be granted may be made in "any pleading permitted or ordered under Rule 7(a), or

by motion on the pleadings, or at trial on the merits." Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

 When Rule 12(c) is used to raise the defense of failure to state a claim, the standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir.1988); *Luzon v. Atlas Ins. Agency, Inc.,* 284 F.Supp.2d 1261, 1262 (D.Haw.2003); *Cornwell v. Joseph,* 7 F.Supp.2d 1106, 1108(S.D.Cal.1998). As a result, a motion for judgment on the pleadings may be granted " 'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.' " *Id.* (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,* 132 F.3d 526, 528 (9th Cir.1997) (*citing McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir.1996)). "Not only must the court accept all materi-al allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." *McGlinchy,* 845 F.2d at 810.

## II. Motion for Summary Judgment

 The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1] Fed. R.Civ.P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "[2] *Thrifty Oil Co. v. Bank of America Nat'l Trust & Sav. Ass'n,* 310 F.3d 1188, 1194 (9th Cir.2002) (quoting *Union School Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

1. Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence. Fed.R.Civ.P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

2. Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir.1986).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party may do so with affirmative evidence or by " 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. *See, e.g., T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). The Court's role is not to make credibility assessments. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Id.* at 250–51, 106 S.Ct. 2505. Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348; *California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002); *see also T.W. Elec. Serv.*, 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence tending to support the complaint." *T.W. Elec. Serv.*, 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## DISCUSSION

Butler–Mroz's First Amended Cross–Claim sets forth the following claims: Count 1—Breach of Fiduciary Duty Owed as Partners; Count 2—Breach of Fiduciary Duty Owed as Majority Owners; Count 3—Unjust Enrichment; Count 4 -Interference with Contractual Relations; Count 5—Interference with Prospective Economic Advantage; Count 6—Civil Conspiracy; Count 7—Breach of Contract; Count 8—Specific Performance; Count 9—Estoppel; Count 10—Derivative Claim on Behalf of New Hoaloha; Count 10A–Derivative Claim for Breach of Fiduciary Duty; Count 10B—Derivative Claim for Misappropriation of Corporate Assets; Count 10C—Derivative Claim for Unjust Enrichment; Count 11—Indemnity and Contribution; Count 12—Accounting; and Count 13—Punitive Damages.

Two motions are before the Court. First, Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC seek their dismissal from Counts 1–9 and 11–13 of Kevin Butler–Mroz's First Amended Cross–Claim. Second, Defendants Michael Moore, Timothy Moore, and Robert Aguiar seek dismissal of the claims, asserted in Kevin Butler–Mroz's First Amended Cross–Claim ("FACC"), for breach of fiduciary duty based on partnership law (Count 1 and as otherwise incorporated in the FACC), for breach of fiduciary duty based on corporate shareholder law (Count 2 and as otherwise incorporated in the FACC), for wrongful termination (Counts 1 and 2 and as otherwise incorporated in the FACC), for tortious interference with contractual business relations and prospective economic advantage (Counts 4 and 5, and as otherwise incorporated in the FACC), and for conspiracy (Count 6 and as otherwise incorporated in the FACC).

## I. *Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC's Motion*

### A) Factual Background

Prior to filing his FACC, Butler explains that the Companies' counsel, in an e-mail dated August 23, 2004, stated "I now understand there may be insurance coverage for [Butler's] wrongful termination claim. Previously, we understood there was no such direct claim against Hoaloha Corp, but after the mediation it is now clearer that Kevin is in fact asserting such a claim directly against Hoaloha Corp." (Ex. A of Butler Opp.). However, Butler's counsel responded, in an e-mail dated August 25, 2004, "I would like to briefly respond to the statement in this email that my client is asserting a direct claim against Hoaloha Corp. for wrongful termination. I do not believe this is correct. My client has claims against the Majority Partners for interference with contractual relations/prospective economic advantage regarding the termination of his position with Hoaloha Corp and with Ilima. He, of course, also has breach of fiduciary duty claims against the Majority Partners arising out of the termination of his position. In any event, to clarify our claims and assert additional ones, I am preparing an amended crossclaim which we will soon be ready to file.... However, I did not want you to be under a misapprehension of our claims. As regards, Hoaloha, our claims remain derivative claims." (Ex. A of Butler Opp.).

Thereafter, Butler filed his FACC on September 14, 2005, and the Companies filed their Answer and a Cross–Claim against Butler on September 24, 2004. On May 2, 2005, Butler's counsel had lengthy conversation with Lynn Toyofuko ("Toyofuko"), one of the Companies' counsel. (Butler's Opp. at 3). In this conversation, Butler's counsel reiterated that there were no direct claims against the Companies and stated that he had told this to the Companies' other counsel on other occasions. (Butler's Opp. at 3). Toyofuko did not raise any concern about a need to dismiss the Companies from non-derivative claims. (Butler's Opp. at 3).

In a letter dated May 5, 2005, Toyofuko's office first requested that Butler's counsel agree to dismiss the Companies from the FACC. (Ex. B of Butler Opp.). The Companies' counsel did not receive a response to this letter and left several messages to inquire as to Butler's counsel's response. (Companies' Reply at 3). In a conversation on May 10, 2005, Butler's counsel stated that he had been in arbitration and may not have received the May 5th letter. (Companies' Reply at 4). The Companies' counsel explained in this conversation that, since sending the May 5th letter, it had come to their understanding that the Companies were " 'necessary parties' (but only nominal defendants) to the [FACC] for the purposes of Butler–Mroz's derivative claims in the Cross–Claim." (Companies' Reply at 4). Thus, in the May 10, 2005 conversation, the Companies' counsel requested that Butler stipulate to the Companies' dismissal from all non-derivative claims in the Cross–Claim. (Companies' Reply at 4). That same day, the Companies' counsel sent a letter memorializing their conversation with Butler's counsel along with a copy of the May 5th letter and a stipulation to dismiss the Companies from all non-derivative claims. (Companies' Reply at 4).

Butler's counsel responded in a letter dated May 11, 2005. He stated, "Your letter requesting that my client stipulate to a dismissal of direct claims against these entities that were not made is improper as is your threat to file a motion to seek dismissal of non-existent claims and to seek fees and costs." (Ex. D of Butler Opp.). The letter also stated, "[R]ather than worrying about non-existent claims, you would be better advised to provide

your clients with independent advice regarding the derivative claims asserted. I look forward to your unbiased evaluation.... As you are counsel for the companies, please provide me your assessment regarding my client's claims. Please note that my client reserves the right to assert recompense on behalf of the companies for any expenses incurred by the companies as a result of your legal bills." (Ex. D of Butler Opp.).

During a conversation that same day, Butler's counsel stated that "he did not see the need or think it was proper to dismiss claims that were not made but that if there was some legitimate concern with the FACC that he would agree to amend the FACC to resolve the ambiguity". (Butler Opp. at 4). The Companies' counsel, Ms. Kidani, explained that there was ambiguity in Paragraph D of the prayer for Relief in the Cross–Claim.[3] (Companies' Reply at 4). Butler's Counsel responded in another letter dated May 11, 2005. (Butler Opp. at 4; Ex. F of Butler Opp.). The letter stated, in relevant part, "In my telephone conversation today, Ms. Kidani indicated a potential ambiguity in paragraph D of the prayer for relief in my client's [FACC], which led you to think that you may need to file your motion to dismiss your clients from the non-derivative counts of the Cross–Claim despite my earlier letter today. Please be advised that the intent of

paragraph D is not to surreptitiously assert direct claims against your clients. To clarify any concern that may exist in your minds, I would agree to amend that paragraph in the first and second lines to replace 'compelling New Hoaloha and Ilima' with 'compelling the Majority Partners'. This should resolve the matter." (Ex. F of Butler Opp.).

The Companies explain that by the time that the Companies received this letter, it was the day of the motions cutoff, May 11, 2005, and that in evaluating Butler's offer to amend the Cross–Claim, counsel for the Companies "knew that the parties' deadline to amend pleadings had long past (on September 3, 2004), and there was no guarantee the Court would allow Butler–Mroz to amend his Cross–Claim at such a late stage in the case and with trial quickly approaching on October 11, 2005" and "even though [Butler's counsel] had represented to [the Companies' counsel] that Butler–Mroz had not pled any direct claims against the [Companies], the Cross–Claim itself was still ambiguous in this regard, and [the Companies'] counsel were simply unwilling to 'take Butler–Mroz's word for it.'" (Companies' Reply at 5–6). The Companies filed their Motion for Partial–Dismissal on May 11, 2005.

**B) Analysis**

 Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC (jointly, "the Companies") seek their dismissal[4] from Counts

---

3. Paragraph D of the FACC's Prayer for Relief requests, "That the Court issue an injunction compelling New Hoaloha and Ilima to (a) allow Butler–Mroz a reasonable opportunity to inspect the financial records of New Hoaloha and Ilima, (b) allow Butler–Mroz a reasonable opportunity to inspect the corporate/company books for New Hoaloha and/or Ilima, (c) require that New Hoaloha and Ilima provide an accounting of their financial records from January 1, 2002 to the present at the expense of the Majority Partners, (d) require that New Hoaloha and Ilima recoup the excessive compensation and any other improper corporate expenditures paid to the

Majority Partners, and (e) reinstate Butler–Mroz in a management capacity with New Hoaloha and with Ilima." (Ex. A of Companies' Mot.)

4. Because the pleadings are closed and the Companies and Butler have submitted materials outside the pleadings, the Court will construe the Companies' motion for partial dismissal as a motion for summary judgment. *See* Fed.R.Civ.P. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If on a motion for judgment on the pleadings, matters outside

1–9 and 11–13 of Kevin Butler–Mroz's First Amended Cross–Claim Against Defendants Michael Moore, Timothy Moore, Robert Aguiar, Hoaloha Na Eha, Inc., and Na Hoaloha Ilima, LLC filed September 14, 2004. Kevin Butler–Mroz states that the Companies are seeking dismissal from an action that is not pending against them and from counts in the FACC under which they were never named a party. Because the parties agree that Counts 1–9 and 11–13 of Kevin Butler–Mroz's "First Amended Cross–Claim Against Defendants Michael Moore, Timothy Moore, Robert Aguiar, Hoaloha Na Eha, Inc., and Na Hoaloha Ilima, LLC" do not state claims against the Companies, the Court finds that Counts 1–9 and 11–13 of Kevin Butler–Mroz's First Amended Cross–Claim fail to state a claim against Defendants Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC and accordingly GRANTS their motion as to those counts.

## II. Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Partial Dismissal of Butler–Mroz's Cross–Claim

Defendants Michael Moore, Timothy Moore, and Robert Aguiar seek dismissal of the claims, asserted in Kevin Butler–Mroz's First Amended Cross–Claim ("FACC"), for breach of fiduciary duty based on partnership law (Count 1 and as otherwise incorporated in the FACC), for breach of fiduciary duty based on corporate shareholder law (Count 2 and as otherwise incorporated in the FACC), for wrongful termination (Counts 1 and 2 and as otherwise incorporated in the FACC), for tortious interference with contractual business relations and prospective economic advantage (Counts 4 and 5, and as otherwise incorporated in the FACC), and for

conspiracy (Count 6 and as otherwise incorporated in the FACC).

## A) Factual Background

Butler's FACC alleges that in 1987 Butler, Michael Moore, Timothy Moore, and Robert Aguiar ("the friends"), implemented a plan to operate a luau business on the island of Maui. (FACC ¶ 11). Butler further alleges that "[f]rom the beginning of their plan to operate a luau business, M. Moore, T. Moore, Aguiar and Butler–Mroz, agreed that each would have an equal interest in the business and that each would be involved in the management and operation of the business" and that the four friends "considered themselves to be business partners and acted as such." (FACC ¶ 12). The FACC states that "[t]he [friends] have and continue to conduct their luau business, known presently as Old Lahaina Luau, through various corporations." (FACC ¶ 13).

The FACC explains that the first corporation formed by the friends was EHA, which was formed on or about March 17, 1987. (FACC ¶ 13). The next corporation was Hoaloha Na Eha, Ltd. ("Old Hoaloha"), which was formed on or about November 10, 1987. (FACC ¶ 13). The third corporation was Whaler's Pub, Inc., into which EHA and Old Hoaloha were merged on or about February 12, 1992, with Whaler's Pub, Inc. thereafter changing its name to Hoaloha Na Eha ("New Hoaloha"). (FACC ¶ 13).

Butler further alleges that prior to the merger of EHA and Old Hoaloha into the corporation that became New Hoaloha, the friends were officers and directors of EHA and Old Hoaloha. (FACC ¶ 14). The FACC states, "Each of the partners had

---

the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."). The Court so

notified the parties at the hearing and asked if they wished to supplement the record and they did not.

an equal ownership interest in these corporations, and were involved in the management and operation of the luau business, which was initially known as Old Lahaina Luau." (FACC ¶ 14). Upon the formation of New Hoaloha, the friends became officers and directors of the corporation. (FACC ¶ 15). Each of the friends held an equal ownership interest in the corporation, remained involved in the luau business, and received a salary and benefits from New Hoaloha. (FACC ¶ 15).

On or about December 17, 1997, the friends and Yamauchi formed and registered Na Hoaloha Ilima, LLC ("Ilima") as a Hawaii limited liability company. (FACC ¶ 16). The friends each retained a 22.5% ownership interest in Ilima, while Yamauchi had a 10% interest. (FACC ¶ 16). On or about December 17, 1997, Ilima and Ale'ale'a, LLC formed and registered Ewalu Partners, LLC ("Ewalu") as a Hawaii limited liability company. (FACC ¶ 16). Butler alleges that "[t]he business of Ewalu was and is to run a Polynesian-style dinner show know as the Feast at Lele, with Ilima being responsible for the show portion and Ale'ale'a being responsible for the dinner portion." (FACC ¶ 17).

The FACC alleges that "on or about 1999, New Hoaloha purchased from the [friends], as individuals, property located at 495 Wainaee Street, Lahaina Hawaii through an agreement of sale with each [friend] to receive an equal share of sale proceeds after the mortgage and other joint expenses were paid. After the purchase, this property has remained a partnership asset, with ownership in the name of New Hoaloha." (FACC ¶ 18). Butler further alleges that "[o]n or about March 2001, it was mutually agreed for nonbusiness reasons among the [friends] that Butler–Mroz would work with Yamauchi at the Feast at Lele. Butler–Mroz would continue to receive the same salary and same benefits from New Hoaloha as he had been

receiving prior to beginning work at the Feast at Lele." (FACC ¶ 19). Immediately prior to March 2001, each of the friends was receiving an annual salary of approximately $325,000 from New Hoaloha. (FACC ¶ 20). After Butler began working at the Feast at Lele, he continued to receive this annual salary from New Hoaloha and received no compensation from Ewalu or Ilima for his work at the Feast at Lele. (FACC ¶ 20).

Butler further alleges that in March 2002, M. Moore, T. Moore and Aguiar ("the Majority") reached an agreement with Butler whereby in exchange for receiving his interest in New Hoaloha and the cessation of any salary or benefits to be paid to him by New Hoaloha after March 2002, the Majority would give Butler their interests in Ilima and $1,000,000. (FACC ¶ 21). However, in April 2002, Butler alleges that the Majority reneged on their part of the deal and instead of conveying their interest in Ilima to Butler and paying $1,000,000, "they used their majority partnership interest in both New Hoaloha and Ilima to wrongfully terminate or cause New Hoaloha and Ilima to wrongfully terminate Butler–Mroz's employment with either company and with the businesses (i.e. Old Lahaina Luau and the Feast at Lele)." (FACC ¶ 22). Butler alleges that the Majority also wrongfully terminated payment of compensation and benefits to Butler. (FACC ¶ 22).

The FACC states that the Majority "have also since April 2002 refused to allow New Hoaloha to pay any dividends to Butler–Mroz and have refused to allow New Hoaloha to pay monies that remain owing to Butler–Mroz from the sale of the property at 495 Wainaee Street, Lahaina, Hawaii." (FACC ¶ 23). Finally, Butler alleges "[u]pon information and belief, since April 2002, the Majority … ha[s] used New Hoaloha funds and Ilima funds

to pay themselves excessive compensation and/or benefits, while at the same time excluding Butler–Mroz from the use of any New Hoaloha funds or Ilima funds." (FACC ¶ 23).

## B) Analysis

### 1) Count 1—Breach of Fiduciary Duty Based on Partnership Law

Under Hawaii law, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Haw.Rev. Stat. § 425–109. The term "partnership agreement" is defined as "the agreement, whether written, oral, or implied, among the partners concerning the partnership ...." Haw.Rev.Stat. § 425–101. Whether an agreement creates a partnership depends upon the intention of the parties. *Buffandeau v. Shin*, 60 Haw. 280, 587 P.2d 1236, 1237 (1978). "There are no specific indices of partnership, although an agreement to share in the profits and losses of a business is weighty evidence thereof." *Id.* Whether a partnership exists is normally a question of fact. *Great Hawaiian Financial Corp. v. Aiu*, 863 F.2d 617, 620 (9th Cir.1988) (applying Hawaii law and *citing Matter of O.W. Limited Partnership*, 4 Haw.App. 487, 668 P.2d 56, 62 (1983)). Under Hawaii law, a partnership may be found even in the absence of a formal contract between the parties. *Id.* "In order to constitute a partnership, there need be no partnership name nor any stipulation that there is a partnership." *Matter of O.W. Limited Partnership*, 4 Haw.App. 487, 668 P.2d 56, 62 (1983) (citations omitted).

Here Butler has alleged facts supporting the existence of a partnership. The FACC alleges "[f]rom the beginning of their plan to operate a luau business, M. Moore, T. Moore, Aguiar and Butler–Mroz, agreed that each would have an equal interest in the business and that each would be involved in the management and operation of the business" and that the four friends "considered themselves to be business partners and acted as such." (FACC ¶ 12). The FACC states that "[t]he Partners have and continue to conduct their luau business, known presently as Old Lahaina Luau, through various corporations." (FACC ¶ 13).

It is true that Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC cannot be partnerships because they are a corporation and a limited liability company, respectively. *See* Haw.Rev.Stat. § 425–109 (stating that "[a]n association formed under a statute other than this part [Uniform Partnership Act], a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this part."). However, Butler does not allege that these entities are partnerships rather he alleges the existence of a partnership which operated through various entities, including Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC. (Butler Opp. at 6; FACC ¶ 13). Butler further alleges that the friends "conducted 'partnership' business outside of the named corporations." (Butler Opp. at 6). "For example, the partnership existed such that the Partners joined with Troy Yamauchi to form Ilima, and the Partners agreed Butler would work for Ilima, but receive pay from Hoaloha, even though Ilima and Hoaloha were separate entities." (Butler Opp. at 6; FACC ¶¶ 16 & 19).

The Court finds that Butler has adequately alleged that the friends formed an association to carry on as co-owners a business for profit and that Butler has thus sufficiently alleged the existence of a partnership. The Court accordingly DENIES Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Judgment on the Pleadings as to Butler's

claims of breach of fiduciary duty based on partnership law (Count 1 and as otherwise incorporated in the FACC).

### 2) Count 2—Breach of Fiduciary Duty owed as Majority Shareholders

Count 2 of Butler's FACC alleges that Michael Moore, Timothy Moore, and Robert Aguiar (collectively, "the Majority") are "majority shareholders, officers, and directors of New Hoaloha" and "majority owners and member-managers of Ilima" and that as a result they owed a fiduciary duty to Butler as a minority shareholder. The Majority argues, however, that the Court should dismiss Count 2 of Butler's FACC and all claims based on an alleged breach of shareholder duty because the members of the Majority are not controlling shareholders and do not have a fiduciary duty to Butler.

The Majority concedes that controlling shareholders owe fiduciary duties to minority shareholders. (Mot. at 10). However, they argue that here "none of the Cross–Claim Defendants own more than 25% of either defendant corporation. Thus, none of them are controlling stockholders." (Mot. at 12). While the Hawaii Courts have not defined "controlling shareholder," the Hawaii Supreme Court has held that "fiduciary principles govern[ ] the relationship between controlling and minority shareholders." *Perl v. IU Int'l. Corp.*, 61 Haw. 622, 607 P.2d 1036, 1046 (1980) (finding that a merger effected for the sole purpose of freezing out minority interest is a violation of fiduciary principles, where minority shareholder brought suit against company owning fifty-four percent of the subject company's stock). In *Perl*, the Supreme Court of Hawaii found Delaware caselaw to be persuasive authority in discussing the fiduciary principles that govern the relationship between controlling and minority shareholders. *Id.*

In *Kahn v. Lynch Communication Sys.*, 638 A.2d 1110, 1113–14 (Del. 1994) (citation omitted), the Supreme Court of Delaware held that "a shareholder owes a fiduciary duty only if it owns a majority interest in or *exercises control* over the business affairs of the corporation." Thus, a shareholder who owns less than 50% of a corporation's outstanding stocks may be a controlling shareholder if the shareholder has actual control of the corporation's conduct. *Id.* Such control need not be held by a single individual and may be held by a group of shareholders who collectively own a majority of shares or otherwise dominate or control of the corporation. *See e.g., Thorpe v. CERBCO, Inc.*, 676 A.2d 436, 438 (Del.1996) (holding that a group of two individuals were controlling shareholders even though they owned only 24.6% of the subject corporation's equity stock because they exercised effective voting control with approximately 56% of the total votes); *Locati v. Johnson*, 160 Or.App. 63, 980 P.2d 173, 175 (1999) (stating that "a shareholder does not necessarily have to own a majority of the stock to be a controlling shareholder. Rather, a small group of shareholders who together own a majority and who act in concert may be controlling shareholders" and acknowledging that even "one 50 percent owner can be a controlling shareholder with fiduciary duties to the other 50 percent owner"); American Law Institute, *Principles of Corporate Governance* § 1.10(a) (1994) ("A 'controlling shareholder' means a person ... who, *either alone or pursuant to an arrangement or understanding with one or more other persons:* (1) Owns and has the power to vote more than 50 percent of the outstanding voting equity securities ... of a corporation; or (2) Otherwise exercises a controlling influence over the management or policies of the corporation or the transaction or conduct in question by virtue of the person's position as a shareholder.") (emphasis add-

ed). Here Butler has sufficiently alleged that because each of the friends owns an equal share of both Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC and because T. Moore, M. Moore, and Aguiar acted in concert, they had fiduciary duties to Butler as a minority shareholder. (FACC ¶¶ 15 & 16).

 The Majority also argues that the Court should dismiss Count 2 of Butler's FACC and all claims based on an alleged breach of shareholder duty because "all corporations are to be governed by corporate principles, not partnership principles." (Motion at 6). The Majority argues that this Court should accept as guidance the Supreme Court of Delaware's decision in *Nixon v. Blackwell,* 626 A.2d 1366 (Del. 1993). In *Nixon,* the Supreme Court of Delaware held that because, under Delaware law, a corporation could elect to become a close corporation and thus subject itself to statutory provisions applicable only to close corporations, the court would not create special relief for a corporation that did not elect to become a statutory close corporation. *Id.* (stating that "One cannot read into the situation ... any special relief for the minority stockholders in [the] closely-held, but not statutory 'close corporation' because the provisions ...relating to close corporations and other statutory schemes preempt the field in their respective areas.")

Here the Majority argues that, as in *Nixon,* the Court should refuse to create special rules applicable to closely-held corporations.[5] (Mot. at 9). However, the Majority fails to acknowledge that although the *Nixon* court refused to fashion special rules for non-statutory closely-held corporations, the *Nixon* court found that because the defendants had an interest in the subject transactions they had the burden of showing the *entire fairness* of those transactions.[6] *Nixon,* 626 A.2d at 1375–

---

**5.** The Majority also relies extensively on *Merner v. Merner,* 129 Fed.Appx. 342 (9th Cir. 2005), an unpublished decision of the United States Court of Appeals for the Ninth Circuit, applying California corporate law. In *Merner,* the Ninth Circuit held that because California had enacted various rules which take into account the unique nature of closely-held corporations, it would "hesitate to assume the California Supreme Court would fashion judicially created rules to remedy alleged deficiencies in this statutory scheme." *Id. (citing Nixon,* 626 A.2d at 1380–81). Thus, the Ninth Circuit held that a minority shareholder in a closely-held California corporation is subject to the same fiduciary duties he or she would owe in a non-closely-held corporation. *Id.* The Court concluded that the defendant *minority* shareholder's sale of his stock did not breach any fiduciary duty to the plaintiff *majority* shareholder. *Id. Merner* is of little significance to the matter at hand because here, unlike in *Merner,* Hawaii does not have a close corporation statutory scheme. The matter at hand is also distinguishable from *Merner* in that Butler, a minority shareholder, is alleging that the majority shareholders breached their fiduciary duties to him as a minority shareholder while in *Merner* the majority shareholder brought suit against the minority shareholder. *Id.*

**6.** In *Weinberger v. UOP, Inc.,* 457 A.2d 701 (Del.1983), the Supreme Court of Delaware explained the two aspects of entire fairness, fair price and fair dealing:

> The concept of fairness has two basic aspects fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.... All aspects of the issue must be examined as a whole since the question is one of entire fairness.

*Id.* at 711. Some cases may involve only the issue of fair dealing. *Nixon,* 626 A.2d at 1376.

76; *see also Clemmer v. Cullinane,* 62 Mass.App.Ct. 904, 815 N.E.2d 651, 652–53 (2004) (*citing Nixon,* 626 A.2d at 1381) ("Despite the sweeping dicta, the *Nixon* decision did not preclude a cause of action for minority shareholder freezeout in close corporations. Rather, that decision held that, in cases where the controlling shareholders stood personally to benefit by the actions alleged to constitute the freezeout, '[t]he entire fairness test correctly applied and articulated, is the proper judicial approach.' "). Thus, here even if the Court were to apply the standard enunciated in *Nixon,* as the Majority argues is appropriate, Butler's claim would not require dismissal as a matter of law.

Butler has alleged acts which, if proven, may constitute breach of fiduciary duties owed by majority shareholders to minority shareholders. For example, Butler alleges that the Majority 1) used corporate funds for their personal benefit, 2) excluded Butler from participation in the benefit of such funds, 3) wrongfully terminated Butler, 4) failed to allow Butler reasonable inspection of corporate records, and/or 5) failed to provide a proper accounting regarding use of corporate funds. (FACC ¶¶ 37–38).

Under the standards applicable to a motion for judgment on the pleadings, the Court is unable to determine, from the face of the FACC, that Butler has failed to state a claim for breach of fiduciary duties owed as majority shareholders (Count 2).[7] The Court accordingly DENIES Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Judgment on the Pleadings as to Butler's claims of breach of fiduciary duty based on their status as majority shareholders (Count 2 and as otherwise incorporated in the FACC).[8]

### 3) *Wrongful Termination*

 In the sections above, the Court found that Butler has stated a claim for breach of fiduciary duties owed as partners (under Count 1) and as majority shareholders (under count 2). *See supra* Parts II(B)(1)-(2). However, the Majority argues that Butler has failed to state a claim for wrongful termination (under both counts 1 & 2). The Majority argues that under Hawaii's at-will employment doctrine an employee can be fired for any reason or for no reason at all. (Mot. at 17). However, the at-will employment

---

**7.** The Majority argues that the Companies' failure to declare dividends cannot serve as the basis for a breach of fiduciary duty claim. However, Butler does not make this allegation specific to his claim for breach of fiduciary duties owed as partners (Count 1) nor in his claim for breach of fiduciary duties owed as majority owners (Count 2). Butler does allege, in his allegations common to all claims for relief, that the Majority "since April 2002 refused to allow New Hoaloha to pay any dividends to Butler–Mroz and have refused to allow New Hoaloha to pay monies that remain owing to Butler–Mroz from the sale of the property at 495 Wainaee Street, Lahaina, Hawaii." (FACC ¶ 23). Because the Court has found that Butler has sufficiently alleged that the Majority had fiduciary duties as partners, directors, and majority shareholders, the Court cannot determine that Butler's allegation regarding dividends cannot support a

breach of any of those duties as a matter of law.

The Majority also argues that Butler's claim in ¶ 40 of the FACC regarding excessive compensation and regarding "audited financial review" must be dismissed. (Mot. at 30–31). However, ¶ 40 of the FACC is a statement of requested relief and not an asserted claim. The Court need not address these issues in ruling on the Majority's motion for judgment on the pleadings.

**8.** The Court notes that Count 2 of Butler's FACC also states claims based on breach of the Majority's fiduciary duties as directors and officers of Hoaloha Na Eha, Ltd. and as member-managers of Na Hoaloha Ilima, LLC. However, the Majority did not dispute the sufficiency of these claims and thus the Court will not address them.

doctrine is subject to a public policy exception. *See Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982).

In *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982) (emphasis added), the Supreme Court of Hawaii explained:

> Because the courts are a proper forum for modification of the judicially created at-will doctrine, it is appropriate that we correct inequities resulting from harsh application of the doctrine by recognizing its inapplicability in a narrow class of cases.... We therefore hold that an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior *judicial decisions* may also establish the relevant public policy.

The Majority argues that Butler has failed to allege that a clear mandate of public policy has been violated by the termination of his employment. (Mot. at 19). The Supreme Court of Hawaii has held that "fiduciary principles govern[ ] the relationship between controlling and minority shareholders." *Perl v. IU Int'l. Corp.*, 61 Haw. 622, 607 P.2d 1036, 1046 (1980). The Supreme Court of Hawaii has also held that "the relation of directors to the corporations they represent is a fiduciary one." *Hawaiian Intn'l Finances, Inc. v. Pablo*, 53 Haw. 149, 488 P.2d 1172, 1175 (1971). Butler has alleged that in terminating his employment, the Majority breached their fiduciary duties as partners (Count 1) and as majority shareholders, officers, and directors (Count 2). In so doing, Butler has alleged a violation of public policy sufficient to overcome the at-will employment doctrine.

The Majority urges this Court to apply Delaware law and argues, citing to *Riblet Prod. Corp. v. Nagy*, 683 A.2d 37 (Del. 1996), that "Delaware courts have refused to recognize a stockholder's employment right." (Mot. at 19). In *Riblet Prod. Corp. v. Nagy*, 683 A.2d 37 (Del.1996), the Supreme Court of Delaware considered the question of "[w]hether majority stockholders of Delaware corporation may be held liable for violation of a fiduciary duty to a minority stockholder who is an employee of the corporation under an employment contract with respect to issues involving that employment." *Id.* at 39. The court determined that the stockholders could not be held liable *because* the case was governed by *an employment contract. Id.* at 40. The court emphasized that the Plaintiff had "actively and successfully pursued his contractual rights as an employee." *Id.* The *Riblet* court also explained, "To be sure, the Majority Stockholders may well owe fiduciary duties to [the plaintiff] as a minority stockholder. But that is not the issue here. [The plaintiff] does not allege that his termination amounted to a wrongful freeze out of his stock interest in Riblet, nor does he contend that he was harmed as a stockholder by being terminated." *Id.* Here, conversely, Butler's employment and termination was not governed by the terms of a bargained for contract and Butler has alleged facts (including his termination, loss of salary and benefits, and failure to receive dividends) which, if proved, support claims of wrongful freeze out and harm suffered as a stockholder.

■ Finally, the Majority argues that Butler's wrongful termination claim must fail because they, "as individuals, cannot be held liable for wrongful termination." (Mot. at 14). However, the Supreme Court of Hawaii has held that officers, directors, and shareholders may be personally liable for the tortious conduct of the corporation or its other agents if

"there can be found some active or passive participation in such wrongful conduct by such persons." *See Cahill v. Hawaiian Paradise Park Corp.,* 56 Haw. 522, 543 P.2d 1356, (1975).

Moreover, Hawaii courts have applied the Restatement (Second) of Agency, § 228, which states that the conduct of an employee "is not within the scope of employment if it . . . is too little actuated by a purpose to serve the master." *State v. Hoshijo,* 102 Hawai'i 307, 76 P.3d 550, 563 (2003). Here, Butler has alleged that "[i]n causing New Hoaloha and/or Ilima to terminate Butler–Mroz's management position and his salary and benefits, the Majority Partners, individually and as a group, acted with malice and/or ill will, and or with an intent to serve their own personal interests and/or without an intent to serve company interests, and/or outside of the scope of their authority and/or without justification." (FACC ¶ 49). The Court DENIES Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Judgment on the Pleadings as to Butler's claims of wrongful termination because it is not clear that no relief can be granted under any set of facts that can be proven consistent with the allegations.

4) *Counts 4—Interference with Contractual Relations and 5—Interference with Prospective Economic Advantage*

■ In Count 4 of his FACC, Butler claims interference with contractual relations and alleges that the Majority "individually and as a group, knowingly, recklessly and/or intentionally interfered with Butler–Mroz's management position and caused New Hoaloha and/or Ilima to ter-

minate the management position as well as Butler–Mroz's salary and benefits." (FACC ¶ 47). In Count 5 of his FACC, Butler claims interference with prospective economic advantage and alleges that the Majority "individually and as a group, knowingly, recklessly and/or intentionally interfered with Butler–Mroz's ability to regain his management position with New Hoaloha and/or Ilima and his salary and benefits." (FACC ¶ 52). The Majority argues, however, that Butler has failed to state a claim for tortious interference with contractual relations and tortious interference with prospective economic advantage because he does not allege interference with a contract or an economic relationship between him and a third party. (Mot. at 22).

■ The tort of tortious interference with prospective economic advantage requires that the plaintiff prove that a valid business relationship or prospective advantage or expectancy existed between the plaintiff and a third party such that there is a "reasonable probability of it maturing into a future economic benefit to the plaintiff." *Miracle v. New Yorker Magazine,* 190 F.Supp.2d 1192, 1203 (D.Haw.2001). Similarly, an individual asserting a claim of tortious interference with contractual relations must establish the existence of a contract between the plaintiff and a third party.[9] *Id.* at 1202–03 (*citing Lee v. Aiu,* 85 Hawai'i 19, 936 P.2d 655, 668 (1997)). The Majority argues that Butler's claims for intentional interference fail because Butler has not alleged the existence of a "third party."

■ "An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing

9. The Court notes that a claim of tortious interference with contractual relations can be based on a contract that is terminable at will. *See Paulson, Inc. v. Bromar, Inc.,* 808 F.Supp. 736, 742 (D.Haw.1992) ("The theory behind allowing an action for interfering with an at will contract is that although the termination of the contract is at the will of the parties, it is not at will to outside interferers.").

his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract ... An agent, however, *can be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain.*" *Murray v. Bridgeport Hosp.*, 40 Conn.Supp. 56, 480 A.2d 610, 613 (1984) (emphasis added); *accord Storey v. Patient First Corp.*, 207 F.Supp.2d 431, 448 (E.D.Va.2002) (denying motion to dismiss plaintiff's claim of tortious interference and finding plaintiff properly alleged the existence of three actors where plaintiff alleged that the individual defendants were acting for their own reasons and outside of the scope of their employment). Here, as discussed above, Butler alleges that "[i]n causing New Hoaloha and/or Ilima to terminate Butler–Mroz's management position and his salary and benefits, the Majority Partners, individually and as a group, acted with malice and/or ill will, and or with an intent to serve their own personal interests and/or without an intent to serve company interests, and/or outside of the scope of their authority and/or without justification." (FACC ¶ 49). The Court accordingly DENIES Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Judgment on the Pleadings as to counts 4 and 5 of Butler's FACC.

### 5) *Count 6—Civil Conspiracy*

▇ In Count 6 of his FACC, Butler alleges that the Majority, "by concerted action, agreed and intended to: (a) breach their fiduciary duties owed to Butler–Mroz, (b) interfere with Butler–Mroz's management position and cause New Hoaloha and/or Ilima to terminate the management position as well as Butler–Mroz's salary and benefits, (c) interfere with Butler–Mroz's ability to regain his manage-

ment position with New Hoaloha and/or Ilima and his salary and benefits, and (d) permanently prevent Butler–Mroz from regaining his management position with New Hoaloha and/or Ilima and his salary and benefits...." (FACC ¶ 57). Relying on arguments rejected above, the Majority argues that Butler's claim of civil conspiracy must fail because his termination was lawful and because there can be no conspiracy between a corporation and agents of the corporation acting within the scope of their employment. (Mot. at 25).

▇ A civil conspiracy is defined as "a combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i 224, 982 P.2d 853, 881 n. 28 (1999) (internal citations omitted). As discussed above, Butler has stated claims for breach of fiduciary duties owed as partners, majority shareholders, and directors; wrongful termination; tortious interference with contractual relations; and tortious interference with prospective economic advantage. In each instance, Butler has alleged that the Majority has acted in concert to accomplish the alleged wrongful activity. The Court accordingly DENIES Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Motion for Judgment on the Pleadings as to Count 6 of Butler's FACC.

### *Conclusion*

Because the parties agree that Counts 1–9 and 11–13 of Kevin Butler–Mroz's First Amended Cross–Claim do not state a claim against Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC, the Court finds that Counts 1–9 and 11–13 of Kevin Butler–Mroz's First Amended Cross–Claim fail to state a claim against Defendants

Hoaloha Na Eha, Inc. and Na Hoaloha Ilima, LLC and accordingly GRANTS their motion as to those counts.

For the reasons above, the Court DE-NIES Defendants Michael Moore, Timothy Moore, and Robert Aguiar's motion for judgment on the pleadings as to the claims asserted in Kevin Butler–Mroz's First Amended Cross–Claim for breach of fiduciary duty based on partnership law (Count 1 and as otherwise incorporated in the FACC), for breach of fiduciary duty based on corporate shareholder law (Count 2 and as otherwise incorporated in the FACC), for wrongful termination (Counts 1 and 2 and as otherwise incorporated in the FACC), for tortious interference with contractual business relations and prospective economic advantage (Counts 4 and 5, and as otherwise incorporated in the FACC), and for conspiracy (Count 6 and as otherwise incorporated in the FACC).

IT IS SO ORDERED.